SCHOOL DISTRICT NO. 70, RED WILLOW COUNTY, APPELLEE, CROSS-APPELLANT, V. ARTHUR B. WOOD, ADMINISTRATOR, ET AL., APPELLEES, CROSS-APPELLEES: FRED HATHORN ET AL., APPELLANTS, CROSS-APPELLEES.

13 N. W. 2d 153

FILED FEBRUARY 9, 1944. No. 31656.

*Butler, James & Morrison,* for appellants.

*Perry, Van Pelt & Marti, Arthur E. Perry, Cordeal, Colfer & Russell* and *L. H. Cheney, contra.*

Heard before SIMMONS, C. J., CARTER, CHAPPELL and WENKE, JJ., and POLK and NUSS, District Judges.

CARTER, J.

This is a suit in equity brought by the plaintiff school district to compel the performance of a provision in the will of one John E. Hathorn by having the same construed to authorize the payment of $50,000 to plaintiff in lieu of erecting a school building at a similar cost as directed by the will. From a decree ordering the administrator to pay $51,633.35 with interest at 6 per cent per annum to the plaintiff, the defendants appeal. The plaintiff has cross-appealed on the theory that the trial court erred in not awarding the $50,000 and all accumulations thereto to the plaintiff.

The record discloses that John E. Hathorn died in 1920, leaving a will which was admitted to probate and which contains the following provision: "After my wife and myself are both dead and the legacies have been paid as above directed it is my desire that when my property shall have reached the sum of ($50,000) fifty thousand dollars (and School Dist. No. (70) Seventy of which Bartley Red Willow Co. is a part.) shall have purchased not less than one full block of land, then my administrator with the advise and direction of his advisory board shall cause to be erected upon said lot a modern up to date fifty thousand dollar school house all complete which will be the gift or legacy to Dist. No. 70 Bartley, Red Willow Co. Nebraska by Dr. J. E. Hathorn and wife Ella D. Hathorn, and such inscription if any may be placed on the building as the administrator & advisory board think advisable."

The record further shows that the deceased was a highly esteemed citizen of Bartley, Nebraska. He had engaged in the practice of medicine in that community for many years, had served for years as a member of the school board and as president of the local bank. It appears that Ella D. Hathorn, the wife of the deceased, died in 1936, that the property of the deceased reached a valuation of $50,000 at or prior to 1938, and that the school district had purchased more than one block of ground on and prior to November 26, 1915, and had purchased an additional half block in July, 1923.

The record further shows that the plaintiff school district was in need of a new school building in 1923, that the old building was unfit to carry on the school work of the district, and that the district was threatened with the loss of its accredited rating with the state university unless new building facilities were provided. The evidence shows that bonds were voted in the amount of $58,500 to erect a new school building and that it was constructed in 1924. It is further shown that the public had a general knowledge of the provisions of the Hathorn will and there is some evidence to the effect that the construction of the new school building was considered by the school board to be in accordance with the provisions of the will. The administrator of the estate, the defendant Wood, was the president of the local bank and had knowledge of all the matters herein recited. An advisory board was appointed in the will, consisting of the directors of the Bank of Bartley and the members of the School Board of District No. 70, the plaintiff herein. On June 26, 1942, the advisory board ratified the construction of the new school building as being in accordance with the will of John E. Hathorn, and demanded that the defendant Wood, as administrator, turn over the sum of $50,000 as by the will provided. It is clear from the evidence that the school building constructed in 1924 adequately serves the school district and that there is no need for another building. The defendant Wood stands ready to comply with a final order of the court with respect to said funds. The question to be determined is whether the plaintiff district is entitled to any funds by virtue of the will and the conditions as they existed when the suit was filed and, if so, in what amount. Defendants contend that the provisions of the will have lapsed and that said funds have become a part of the residuary estate of the deceased.

Defendants contend that the trial court was in error in holding that the will created a charitable trust when it is in fact a gift upon condition. The contention of the defendants appears to be supported by the holdings of this court. *Allebach v. City of Friend*, 118 Neb. 781, 226 N. W. 440;

*Hobbs v. Board of Education,* 126 Neb. 416, 253 N. W. 627. But this fact in itself can avail defendants nothing, for this court has held, and we think the authorities hold generally, that such a gift to a charitable corporation is equivalent to a bequest upon a charitable trust and will ordinarily be governed by the same rules. *Rohlff v. German Old People's Home,* 143 Neb. 636, 10 N. W. 2d 686. We again reiterate that a gift upon condition to a charitable corporation to further the purposes of such corporation is governed by the same principles of law as a bequest upon a charitable trust. This is so because the want of the trust relation in the former is overcome by the fact that the purpose of the charitable corporation coincides with the charitable purpose of the gift.

A charitable bequest to a school district is valid if it is made for the furtherance of one or more of its corporate purposes. The furtherance of education is held generally to be a charitable purpose in this country, unaffected by the fact that education is largely under public control and supported generally by taxation. The bequest in the instant case was clearly for a public purpose and properly made to the school district for the accomplishment of one of its corporate purposes.

The appellants in the present case are the heirs at law of the donor. The will provided that each should receive a specific legacy of $500. The legacies have been paid and the receipts of each of the legatees appear in the record. It is the contention of appellants that where a gift is made by will to a governmental body to be used for a specific charitable purpose, the accomplishment of that purpose is a condition subsequent and upon the failure of which the gift reverts. We believe this to be a correct statement of the law. *Marble v. City of Tecumseh,* 103 Neb. 625, 173 N. W. 581; *Allebach v. City of Friend, supra.* Appellants further contend that where a bequest is made to construct a building for a designated charitable institution it is a gift for a particular purpose and does not indicate a general charitable intent and where, as here alleged, the particular

purpose contemplated is impossible of fulfillment, or has already been carried out, the doctrine of *cy pres* will not be applied and the bequest will revert to the donor or his heirs. It is the contention of appellees that the donor evidenced a more general charitable intent in his will than to merely provide for the construction of a new school building, and this being true, the more general intent should be carried out by a court of equity by directing the application of the property to some charitable purpose which falls within the more general charitable intention of the donor. It is the correctness of the positions assumed by the parties in this respect which is of primary concern in the present case.

The most serious question is whether the express provision of the will that the bequest shall be used to construct a new school building must be literally executed, even though a new school building, meeting all needs, had been built by the school district after the death of the donor and prior to the time the bequest became available. Would it violate the intention of the donor to apply the fund to other educational purposes of the plaintiff school district, or did the donor intend a reversion if the school building was not constructed? Can it not be said that the education of the youth of the plaintiff district was regarded as the leading and dominant purpose of the charity and that effect should be given to it by such a variation of the donor's scheme as to make it practical and successful?

It is evident from the will itself what the donor intended. He first provided for his wife throughout her lifetime. He further provided for $500 legacies to each of his two nephews, his only remaining heirs. He then provided that after the death of his wife and himself, and the payment of the two $500 legacies, when his property shall have reached the sum of $50,000 and School District No. 70 shall have purchased one full block of land, then his administrator with the advice and direction of his advisory board named in the will should cause a modern, up-to-date schoolhouse to be erected upon said block of land, the building to bear such

an inscription concerning the benevolence of the donor and his wife as the advisory board might direct. The will contains statements which in themselves indicate that the donor's charitable intent was more general than the mere construction of a building. In the fifth paragraph of the will he suggests that all his books, which are suitable and not desired by his wife, be turned over to the school library of District No. 70. In paragraph six he suggests that "as this property is finally to go for the benefit of Bartley and School District No. 70" the expense of handling his estate should be at the lowest terms possible. There is no provision in the will regarding a reverter, nor does the will contemplate the existence of a residuary estate, or purport to dispose of such an estate. It is evident that the donor, after providing for his wife and having no children of his own, wished to devote the rest of his property to a charity. His benevolent and philanthropic purpose was a contribution to the education of the youth of School District No. 70, the school district in which the village of Bartley is located. At the time he made his will and at all times thereafter until his death he, as a member of the school board of District No. 70, knew of the need for a new school building in that district. It was his thought, no doubt, that he could best contribute to the education of the youth of the district by building a new school building for their use. He did not contemplate, however, that a new building would have to be constructed before his bequest became available under the terms of his will. His dominant purpose is clear and it is not defeated because he failed in the perfection of detail as to all eventualities and changed conditions which might come about. A literal construction of the will makes his scheme impossible and defeats the dominant purpose of the gift, while a more liberal construction saves it through a mere change of detail and thus gives effect to the more general charitable purpose of the donor as shown by the will.

Such a situation calls for the exercise of the general equity powers of a court of chancery and the application

of the judicial *cy pres* doctrine. This doctrine has been defined as meaning " * * * that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; * * * ." 14 C. J. S. 512, sec. 52. "The doctrine of judicial *cy pres* is in reality a principle of construction based on a judicial finding of the donor's intention as applied to new conditions." *Rohlff v. German Old People's Home, supra.* It is true that this doctrine will not be applied if the donor indicates an intent that it shall be used for a narrow specific purpose, for that would defeat the purpose of the donor. But where, as here, the specific purpose recited cannot be accomplished because of changed conditions, and a more general charitable purpose is shown by the will, the judicial *cy pres* doctrine may be resorted to, not to defeat the donor's intention, but to effectuate it. Any other rule would sometimes defeat the very purpose of the charity, disappoint just expectations and destroy gifts of great public importance. Where a main charitable purpose is disclosed with reasonable clearness, directions of the donor relating to the details to be followed in accomplishing the purpose of the donor, which are not intended as limitations, will be regarded as directory only where it is necessary to do so in order to carry out such main charitable purpose. In such cases it must be presumed that specific details as to carrying out the purposes of the gift were not intended to defeat the charity when changed conditions made them impracticable or impossible of performance, and there is no language in the bequest indicating that the donor intended a literal compliance with recited details to avoid a reverter. Whether or not the principle invoked by the trial court in arriving at this result be designated as the judicial *cy pres* doctrine, or whether it is considered only as a principle of construction based on a judicial finding of the donor's intention as applied to new conditions, and in this respect courts generally do not appear to be in accord, the result must necessarily be the same.

We conclude, therefore, that when a definite charity is created, the failure of the particular mode by which its dominant purpose is to be effected will not defeat the charity, for a court of equity is required under such circumstances to substitute another mode. In this respect the *cy pres* doctrine as commonly understood has two main features; the right to exercise prerogative authority enabling a court to deal with a charitable bequest having no designated particular purpose as a bequest to charity generally, and the other, the right by liberal rules of construction to deal with a charitable bequest having a designated purpose and enforce it within the limits of such purpose, supplying that which is necessary to accomplish the donor's intention. The *cy pres* doctrine as indicative of prerogative authority does not prevail in this state and is not exercised here, but the latter is recognized as within the powers of a court of equity and was properly exercised in the present case.

The foregoing principles are generally supported by text writers and the decisions of the courts. *Matteson v. Creighton University,* 105 Neb. 219, 179 N. W. 1009; *Hobbs v. Board of Education, supra; Rohlff v. German Old People's Home, supra;* Restatement, Trusts, sec. 399; 10 Am. Jur. 680; 14 C. J. S. 510, sec. 50.

The trial court, after arriving at the same conclusions as we have heretofore expressed, directed the administrator to pay $51,633.35 with interest thereon from the date of the decree at 6 per cent per annum to the plaintiff district to be used by it in carrying out the purposes of the donor in the manner which the trial court prescribed in the decree. This amount consists of the original gift of $50,000 with interest at 6 per cent per annum from June 26, 1942, the date on which demand was first made by the plaintiff district for the payment of the amount due under the terms of the will. The school district has cross-appealed, claiming that it is entitled to the whole of the fund in the hands of the administrator.

The appellants contend that there is no merit in the cross-appeal for the reason that the basis of the cross-appeal was

never raised by the pleadings. The prayer of plaintiff's petition in so far as the amount claimed to be due is as follows: "That the said A. B. Wood * * * be required to carry out the trust under the terms and conditions of said will by paying over to the plaintiff, or causing the same to be paid over, said $50,000; * * * " and "For interest on said $50,000 since said sum became available and for such other, further and different relief as to the court appears to be just and proper." It is urged that the claim of the plaintiff for all of the fund, including that in excess of $50,000, is not in response to the pleadings or the prayer of the petition and that this court cannot consider the question raised by the cross-appeal.

The evidence shows that the will of John E. Hathorn was attached to and made a part of plaintiff's petition. If the will, properly construed, provides that the fund of $50,000 and all accumulations thereto belonged to the plaintiff district, we are of the opinion that this court is not foreclosed from so declaring, even though the school district may have misconstrued the will and prayed for a lesser amount than that actually due, where the prayer of the petition includes a request for such other, further and different relief which to the court appears to be just and proper. "A prayer for general relief in an equity action is as broad as the pleadings and the equitable powers of the court." *Gibson v. Koutsky-Brennan-Vana Co.*, 143 Neb. 326, 9 N. W. 2d 298. The prayer for general relief is sufficient to authorize any judgment to which the party is entitled under the pleadings and evidence. *Kelley v. Wehn*, 63 Neb. 410, 88 N. W. 682. The prayer is no part of the pleading, tenders no issue, and neither adds to nor takes from the evidence required of either party. *Jordan v. Jackson*, 76 Neb. 15, 106 N. W. 999. We have also said that a written instrument, incorporated into a pleading as part of a cause of action or defense, controls allegations which it contradicts or which are inconsistent therewith. *American Surety Co. v. School District*, 117 Neb. 6, 219 N. W. 583. We are of the opinion therefore that the will itself controls the allegations of the

petition which it contradicts, or which are inconsistent with the provisions of the will itself.

It is evident from the will itself that the donor knew, when he drafted his will, that his estate did not amount to $50,000 after the payment of the legacies which he set up in the will. He therefore directed his administrator to hold and invest all of the remainder of his estate until the death of his wife and until the total amount of the fund reached $50,000. When both of these events took place, the administrator, with the advice of the advisory board, was to construct a modern, up-to-date $50,000 school building. The evidence shows that the donor's widow died in 1936 and the only evidence adduced as to the time when the fund reached $50,000 was that it had reached that amount in 1938. Consequently, the fund having arrived at the amount of $50,-000 after the death of the widow, and all other conditions having been met, the donee school district became entitled to the benefit of the fund at that time. The administrator, contrary to the provisions of the will, failed to carry out the terms of the will and continued to invest the fund as he had theretofore done, no complaint being made as to the manner of his so doing. The question is: To whom do the earnings belong which were accumulated over the period during which the administrator failed to carry out the terms of the will after all events and conditions precedent to his so doing had occurred or had been met?

We think it is clear that the administrator is accountable to the school district for any profit made by him through, or arising out of, the administration of the fund. In this respect the administrator is in the same position as the trustee of a charitable bequest. If he makes a profit out of the trust property he is accountable to the beneficiary for such profit, even though he commits no breach of trust in making the profit. It seems clear that if the fund belonged to a beneficiary, as in the present case, with possession to be delivered upon the happening of a designated event, and the administrator or trustee improperly withheld it after the event had occurred, all earnings and other accumula-

tions coming into the fund after the happening of the event belong to the beneficiary. It seems to us that when the fund reached the sum of $50,000, the administrator was required by the will to carry out the purpose of the gift. When he failed in his duty, and in violation of the bequest he continued to invest the fund, he is bound to account to the beneficiary for the profits and other accumulations to the fund. The administrator apparently concedes the possibility of this being true, as he stands ready to distribute all of said funds in whatever manner the court may direct. We think the authorities sustain this principle. Restatement, Trusts, sec. 210; 26 R. C. L. 1388. We necessarily conclude under the record in this case that the plaintiff school district is entitled to a decree awarding it the fund of $50,000 and all the earnings, profits and other accumulations to the fund which have acceded thereto since the duty devolved upon the administrator to build the school building, or, as we here held, to carry out the more charitable intent of the donor. The trial court was in error in awarding only $50,000 with interest from June 26, 1942, and determining a scheme which contemplated the charitable use of that sum only. We find it necessary therefore to remand the cause to the district court for the determination of additional facts and the entry of a decree in accordance with such facts and this opinion. We direct the district court to require an accounting by the administrator of the $50,000 and all interest, earnings, profits and other accumulations arising from said fund, that plaintiff be awarded same under the doctrine of judicial *cy pres*, and that a scheme for its use be devolved and decreed within the scope of the more general intent of the donor expressed in the will as herein found to exist.

The plaintiff district also complains of the failure of the trial court to allow it an attorney's fee from the residuary estate. This question has been largely removed by the holding of this court that the whole of said fund belongs to the plaintiff by the terms of the will and the evidence adduced and, consequently, that no residuary estate exists.

Even if this were not so, the trial court was correct in denying the attorney's fee. The basis for the allowance of attorney's fees in this class of cases is: Where many persons have a common interest in property, and one of them, for the benefit of all, at his own cost and expense, takes legal action to protect it, the court of equity in which the suit was brought may order the successful litigant to be reimbursed for his costs, expenses and counsel fees from the common property in order that all benefited may share proportionately in that expense. *Blacker v. Kitchen Bros. Hotel Co.*, 133 Neb. 66, 273 N. W. 836. In the present case there was but one party interested in the fund sought to be reached by plaintiff's suit and that was the plaintiff itself. There is no reason for a court of equity to grant any relief in the matter of counsel fees. The school district and its counsel can adjust them in the same manner as any other litigant who has retained counsel to represent him personally.

The judgment of the district court is reversed and the cause remanded for further proceedings in accord with holdings and directions of this court herein contained.

REVERSED.

PAINE, J., participating on briefs.