IN RE TRUST CREATED BY THE LAST WILL AND
TESTAMENT OF JOHN L. TEETERS, TESTATOR.
DOROTHY EVANS WOOD ET AL., APPELLANTS, V. LINCOLN
GENERAL HOSPITAL ASSOCIATION ET AL., APPELLEES.

288 N. W. 2d 735

Filed February 20, 1980. No. 42638.

Richard H. Williams of Barney & Carter, P.C., for appellants.

Charles D. Humble of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, for appellees.

Heard before BOSLAUGH, MCCOWN, CLINTON, and HASTINGS, JJ., and COLWELL, District Judge.

CLINTON, J.

The issue on this appeal is, shall the doctrine of cy pres be applied in the case of a charitable trust established by the will of John L. Teeters, or shall the bequest lapse and pass to his residuary legatees. Paragraph XII of the will, which was admitted to probate in the county court of Lancaster County, Nebraska, on October 29, 1946, provided as follows: "I hereby give, bequeath and devise in trust to my Executors named in Paragraph XIV hereof the sum of Twenty Thousand Dollars ($20,000) to be invested and the net income used at their discretion for the benefit of Nurses, Student Nurses, the School of Nursing and any employee of Lincoln General Hospital residing in the Sophy H. Teeters Nurses Home. I shall not attempt to prescribe in detail the specific manner of making use of this bequest but leave that to the Superintendent of Nurses of Lincoln General Hospital and her Assistants in Cooperation with the Superintendent of the Hospital."

The trustee administered the trust in accordance with its terms until sometime after May 30, 1975, when Lincoln General Hospital ceased to operate a school of nursing. The trustee then commenced this action in the county court of Lancaster County under the provisions of section 30-2806, R. R. S. 1943, asking for construction of paragraph XII in the light of the change of circumstances, direction as to the proper beneficiaries of the trust, or modification so that the trust provisions would carry out the intent of the testator.

Pursuant to the prayer of the petition, notice was given to all interested parties, including the Attorney General of the State of Nebraska as attorney for public charities. The county court found that the purpose of the trust had failed and that the will evidenced no general charitable intention. It directed that the trust res and accumulated income pass to the heirs at law of John L. Teeters, the residuary legatees named in his will. The Lincoln General Hospital Association appealed to the District Court for Lancaster County which reversed the decision of the county court and directed that the trust be continued for the benefit of: "(a) nurses and student nurses of Lincoln General Hospital, (b) any employees of Lincoln General Hospital, including nurses and student nurses, who might hereafter reside in the Sophy H. Teeters Nurses Home, and (c) any School of Nursing that might hereafter be established by Lincoln General Hospital, all in conformity with paragraph XII of the Last Will and Testament of John L. Teeters." The heirs at law perfected their appeal to this court. We modify by including employees as beneficiaries of the trust and as so modified affirm the judgment of the District Court.

The evidence tends to establish the following. The structure used as a nurses home is named for Sophy, the deceased wife of the testator. Pursuant to the provisions of paragraph I of the will of John L. Teeters, at his death his body was cremated and the ashes placed in a copper urn on which were engraved his name and the dates of his birth and of his death. The urn was then placed in a previously provided bronze-door cabinet in the Sophy L. Teeters Nurses Home (hereafter Teeters home), in which cabinet the ashes of Sophy were already similarly enshrined.

The facts disclosed at trial reveal that, while a school of nursing is no longer in operation at the hospital, the hospital is not devoid of student nurse

training. An arrangement has been made with the University of Nebraska nursing program whereby university student nurses receive their clinical training at Lincoln General Hospital. Anyone using the Teeters home, whether it be student nurses, faculty, nurses, or employees, is allowed to use the lounges and other facilities established through the trust.

At the time of testator's death and for many years thereafter, student nurses lived in the Teeters home. Employees and nurses did not live in the building. Although not all the student nurses lived in the building, all were entitled to use the facilities in the building during their time spent at the hospital. When the nursing program was discontinued in 1975, the student nurses, nurses, and employees continued to use the facilities provided in the Teeters home, although it is no longer used as a residence.

The present use of the Teeters home is that of an adjunct to the hospital in which chemically dependent patients are treated. Nurses and employees of the hospital work therein. No nurse or employee resides in the building. It is located immediately adjacent to the hospital building.

The income from the trust has in the past been used to furnish amenities, such as lounge and recreation furnishings, for student nurses, licensed nurses, and other employees of the hospital who have occasion to be in the Teeters home. The record indicates that the same functions can still be carried out by using the income for the same purpose in the lounges of the Teeters home and Lincoln General Hospital.

The trust corpus was the sum of $20,000. At the time of trial the res plus accumulated income totaled $22,901.66.

The Restatement sets forth the doctrine of cy pres in the following language: "If property is given in trust to be applied to a particular charitable pur-

pose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Restatement, Trusts 2d, § 399, p. 297.

Insofar as the indefiniteness of beneficiaries is concerned, the equitable doctrine of cy pres has been embodied in our statute. Section 30-239, R. R. S. 1943, provides in part: "No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses which shall in other respects be valid under the laws of this state, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same." In Garwood v. Drake University, 188 Neb. 605, 198 N. W. 2d 336, we said: "If the dominant purpose of a charitable trust is certain, it will not be denied execution because of absence of perfection of detail or the presence of immaterial and inappropriate language in the instrument creating the trust. . . . A charitable gift will not be permitted to fail because of any mistake or ambiguity in describing the intended beneficiary or expressing its purpose if from the language of the bequest, when construed in the light of all the facts, the intent of the donor is reasonably apparent."

The foregoing statements of this court conform to the rule that a general charitable intent is a precondition to the exercise of the court's cy pres power. School District v. Wood, 144 Neb. 241, 13 N. W. 2d 153; Connecticut Bank & Trust Co. v. Johnson Memorial Hospital, 30 Conn. Sup. 1, 294 A. 2d 586; City of Danville, Kentucky v. Caldwell, 311 S. W. 2d 561 (Ky., 1958). If the trust instrument evidences no general charitable intention, then the trust fails and the devise or bequest lapses. Rohlff v. German Old

People's Home, 143 Neb. 636, 10 N. W. 2d 686.

An equitable principle applicable to charitable trusts is that of deviation. Restatement, Trusts 2d, § 381, p. 273. The distinction between the doctrine of cy pres and deviation has been stated as follows: ". . . the deviation doctrine is applicable to make changes in the manner in which a charitable trust is administered while cy pres is used in cases where a change of the settlor's specific charitable purpose is involved." 8 Real Property, Probate & Trust Journal, p. 398. The dividing line between the application of the two doctrines is sometimes difficult to draw.

Garwood v. Drake University, *supra,* and Trustees of Dartmouth College v. Quincy, 357 Mass. 521, 258 N. E. 2d 745, are both somewhat similar to the factual situation we have before us here. In Garwood, the sum of $10,000 was bequeathed to the Divinity School of Drake University for scholarships. At the time the bequest became effective, Drake had abolished its Divinity School, which granted both baccalaureate and graduate degrees in divinity, and had instead installed a Department of Religion. That department granted only baccalaureate degrees in religion. However, the same general courses were offered in the School of Religion as had previously been offered in the Divinity School. Neither the Divinity School nor the Department of Religion were legal entities. We held in that case that the trust did not lapse, but passed to Drake University for the purpose of scholarships in the School of Religion.

In Trustees of Dartmouth College v. Quincy, *supra,* there was involved a trust to establish and maintain a school for girls born in Quincy, Massachusetts. The holding in that case is stated at 8 Real Property, Probate & Trust Journal, p. 399, in the following language: "The will provided for a gift over to Dartmouth College to take effect if Quincy failed 'to comply with the words and intent of this will' or used the

trust property 'for any other purpose than contemplated in this will.' The trust was sufficient to establish such a school and to maintain it for the better part of a century, but in the late 1950's it became clear that the income from the trust was no longer sufficient to maintain the school and that the capacity of the school was considerably greater than the number of Quincy girls available to use it. The City of Quincy, as trustee, approved a plan under which qualified girls not born in Quincy could be admitted to the school, and Dartmouth College brought a petition alleging among other things that if the school could not be operated without admitting such girls, the gift over must take effect. The court permitted the admission of non-Quincyborn girls. The court stated:

" 'The situation before us does not call for the usual type of equitable application of charitable gift cy pres. The gift . . . has not yet failed entirely nor has it become impossible of execution strictly in accordance with that article without the application of traditional cy pres principles. . . .

" 'It is not wholly clear in all instances whether a particular decision involves (a) only construction of a charitable trust or a reasonable deviation, in the public interest, from its subordinate provisions, or (b) a traditional cy pres application. . . .

" 'We think that the present case is one where the means and detailed methods stated by the testator "must have been subordinate in his mind to the [predominant charitable] end which he had in view . . ." We think that the proposal now before us is . . . a proper method of carrying out . . . [the testator's] . . . primary charitable trust without violation of any of its basic charitable purposes.' "

In the matter now before this court, the primary argument of the appellants is that the specific purpose of the trust was to benefit those classes of persons described in the will as "residing in the Sophy

H. Teeters Nurses Home." Since the time of discontinuance of the school of nursing, no person of those classes has resided in the structure. Appellants argue the purpose is now impossible of accomplishment and no other general charitable purpose being evident, the bequest must lapse.

The primary rule of construction is that the court must, if possible, ascertain the intention of the testator or creator of the trust. Scully v. Scully, 162 Neb. 368, 76 N. W. 2d 239; Overbeck v. Estate of Bock, 198 Neb. 121, 251 N. W. 2d 872.

In our search to ascertain the testator's intent, we note that no specific words of limitation were used to qualify the bequest, e.g., "for so long as they may reside in the Sophy H. Teeters Nurses Home." Nor did the testator provide for an alternative taker should student nurses cease to reside in the building. It is stated in Bogert, Trusts and Trustees (Rev. 2nd Ed.), § 437, p. 529, that: "It has been held that the absence of a gift over or a provision for reverter on the failure of the charity is evidence of a general intent, . . . ." Fulton v. Trustees of Boston College, 372 Mass. 350, 361 N. E. 2d 1297. We note also that testator was familiar with providing for alternative takers should unexpected events arise, since he provided for alternative takers in several other portions of the will.

The following considerations persuade us that actual residence by beneficiaries in the Teeters home was not a predominant consideration in the testator's mind. The three classes of beneficiaries were student nurses, nurses, and employees of Lincoln General Hospital. It is a reasonable inference that although the testator included nurses and employees of Lincoln General Hospital in the categories of beneficiaries, he must have been aware that neither of the latter categories had ever resided in the home. He could not, therefore, have intended that residence be a condition precedent to eligibility for in-

clusion in the class. Yet it is also evident that Lincoln General Hospital was important to him for he chose a part of its premises, named after his wife, as a repository for the ashes of both. It is also significant that, although the beneficiaries are designated, the amount of income to be used for their benefit is left to [referring to the executors trustees] "their discretion." In like manner he does not prescribe "the specific manner of making use of this bequest but leave[s] that to the Superintendent of Nurses of Lincoln General Hospital and her Assistants in Cooperation with the Superintendent of the Hospital."

It is to be noted also that the "School of Nursing" was included in the category of beneficiaries although it was not apparently a legal entity. Its activities were carried on only in part at the Teeters home and the remainder at the hospital itself.

In sum, it may be said that all the categories of actual persons in the classes still exist and may be served; the place of activities still exists; and the agents of Lincoln General Hospital, to whom the exercise of discretion is entrusted, continue and apparently will continue so long as the institution exists.

From the foregoing analysis, we discern no reason why employees should be excluded from the class beneficiaries. From a strictly grammatical point of view, it may be argued that the phrase, "residing in the Sophy H. Teeters Nurses Home," modifies only "any employee of Lincoln General Hospital," rather than all the other possible antecedents. However, that this was the testator's actual intent seems unlikely since the evidence shows that, with one brief exception, no employee ever resided in the home.

We modify the judgment of the District Court by including "employees" in category (a) of that court's order. As so modified the judgment is affirmed.

AFFIRMED AS MODIFIED.