IN RE R.B. PLUMMER MEMORIAL LOAN FUND TRUST.
UNIVERSITY OF NEBRASKA FOUNDATION, APPELLANT, V.
STATE OF NEBRASKA, APPELLEE.
IN RE KARL RICHARD WIESE STUDENT LOAN FUND TRUST.
UNIVERSITY OF NEBRASKA FOUNDATION, APPELLANT, V.
STATE OF NEBRASKA, APPELLEE.
661 N.W.2d 307

Filed May 23, 2003.   Nos. S-02-463, S-02-464.

(1)

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Don Stenberg, Attorney General, Leslie Levy, and, on brief, Christine Vanderford, for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The University of Nebraska Foundation (Foundation) appeals from orders of the county court denying its requests to revise the intent of two testamentary charitable trusts of two decedents. The trusts require income to be used for loans to students. The Foundation contends that there is inadequate student interest for loans from the trusts and argues that the doctrines of cy pres or deviation can be applied to allow income from the trusts to be distributed as scholarships.

We determine that cy pres does not apply because the purposes of the trusts have not become impractical to carry out. Also, deviation does not apply because the Foundation seeks to change the ultimate purposes of the trusts and because it is unnecessary to change the administration of the trusts to meet their purposes. We affirm.

## BACKGROUND

This action involves two testamentary trusts: (1) the Karl Richard Wiese Student Loan Fund Trust (Wiese Trust), created by the will of C.R. Wiese, and (2) the R.B. Plummer Memorial Loan Fund Trust (Plummer Trust), created by the will of Ralph Ballard Plummer. Wiese's last will and testament, dated in 1967,

bequeaths the residue of his estate to the Foundation to be held in trust and provides in part:

> The net income of this trust shall be expended annually by the Foundation for student loans to meritorious and worthy . . . students regularly enrolled in any college or school of the University of Nebraska. . . . These loans shall be recommended to the Foundation by the General Student Loan Committee of the University of Nebraska. These loans shall be made upon such terms and conditions as the Foundation shall determine advisable, but the same shall be in accordance with the usual practice, then in effect, with respect to such loans of the Board of Regents of the University of Nebraska. If during the year there be no students as described heretofore to whom, in the discretion of the Foundation, such loans should be made, income for such period of time or any part thereof shall be added to the principal of the trust.

Plummer's last will and testament, dated in 1947, bequeaths property and the residue of his estate to the Foundation:

> To create, and keep invested in safe and first class securities, with which to create a fund, which fund is to be loaned to needy students, attending the Agricultural College of Nebraska, to assist them in their education and to be later returned and again become a part of said foundation fund and again to be re-loaned to other students for the same purpose.

In 2001, the Foundation filed petitions alleging that because of changes in the financial aid arena, students are reluctant to pursue loans from multiple sources because federal loans are available at competitive rates. As a result, portions of the income from the trusts are left unused each year. The Foundation asked that the doctrines of cy pres or deviation be applied to allow it to give the annual unused income from the funds to students in the form of scholarships.

The record shows that at the end of fiscal year 2001, the Wiese Trust had a market value of $2,629,687, had an income balance of $249,443 that was not used for loans, and had distributed $10,630 in new loans. At the end of fiscal year 2001, the Plummer Trust had a market value of $848,134, had an income

balance of $633,196 that was not used for loans, and had distributed $13,650 in new loans.

At trial, Jack Schinstock, an associate dean of the College of Agricultural Sciences and Natural Resources at the University of Nebraska-Lincoln, testified about the Plummer Trust. The Plummer loan funds are available to students year round. Flyers about loans through the Plummer Trust have been distributed to students, and academic advisors have been made aware of the existence of the fund.

About 15 to 20 students request loan funds from the Plummer Trust each year. Schinstock uses the Foundation's system to determine if a student's financial needs qualify the student for a loan from the Plummer Trust. He also requires applicants to check with the scholarship and financial aid office to be sure that a loan will not put the student's federal financial aid at risk. Schinstock's college established a loan limit of $3,000, but would consider providing more in a compelling case. A loan from the Plummer Trust is interest free while the student is in school and until 6 months after graduation. After that, the interest rate is 6 percent. Some federal student loans are interest free while the student is in college, and others are not. The loans generally have interest rates between 6 and 9 percent.

Schinstock admitted that he could not state what changes occurred in the area of financial assistance that made the Plummer Trust loans less desirable to students. He also admitted that an interest-free loan would allow students to pay off the loan faster than a federal loan.

David O'Doherty, associate general counsel of the Foundation, testified that the Foundation discourages donors to set up loan funds because it cannot use them efficiently. Some donors insist on loan funds because they feel strongly that a student should pay for college, but O'Doherty did not know whether that was a belief held by either Plummer or Wiese. According to O'Doherty, Wiese's will authorized a committee to choose how to administer the fund. The committee chose to use the fund for short-term loans that have to be paid back within 6 months with a 6-percent interest rate. According to O'Doherty, the Foundation has more long-term loan funds available than it has need for. He also stated

that he believed that the Foundation had a fiduciary duty to charge interest on the loans.

The record is unclear about how the availability of loans from the Wiese Trust is advertised to students or whether they are advertised to upper class students.

According to O'Doherty, there has been a trend over the past 10 years resulting in a 50- to 60-percent decrease in the number of loans students seek from loan funds.

On cross-examination, O'Doherty admitted that he was not familiar with changes in the way the federal government administers student loan programs which would affect the use of the trust funds for student loans. But he stated that in cases involving the medical college, students prefer to get all their loans from the same creditor. He admitted that there was nothing in the trust documents that would prevent the Foundation from providing some students all of their loans from the trusts. He also admitted that the committee could charge interest that would make loans from the trusts more attractive to students than federal loans.

The court found that the wills did not restrict the size of loans or the amount of interest that could be charged. The court further found that the Foundation failed to establish the existence of changes in the financial aid arena which have substantially defeated or impeded the attainment of the original charitable intent to use the trusts for loans. The court determined that the continued use of the trusts for loans was neither impossible nor impracticable and denied the Foundation's requests to revise the trusts to allow them to distribute scholarships. We consolidated the cases for appeal.

## ASSIGNMENT OF ERROR
The Foundation assigns, rephrased, that the county court erred by denying its request to modify the trusts.

## STANDARD OF REVIEW
We have said that in the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002). In an appeal of an equitable action, an appellate court tries factual questions

de novo on the record, provided that when credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003).

Here, the issue is whether these actions are appeals of probate matters or appeals of equity questions. We have also said that appeals involving the administration of a trust are equity matters and are reviewable in this court de novo on the record. *In re Zoellner Trust*, 212 Neb. 674, 325 N.W.2d 138 (1982). The doctrines of cy pres and deviation are equitable doctrines used to adjust the manner in which a trust is administrated. Accordingly, we determine that when the issue is whether a trial court should apply cy pres or deviation, we review the issue de novo on the record.

## ANALYSIS

The Foundation contends that cy pres should apply to allow funds from the trusts to be used as scholarships. It argues that the purpose of the trusts would remain intact because scholarships would be given only after all possible loans from the trusts had been disbursed. The parties do not dispute that the trusts are charitable in nature.

Courts will preserve and enforce charitable trusts if possible under the rules of law. See *Garwood v. Drake University*, 188 Neb. 605, 198 N.W.2d 336 (1972). Where a definite charitable trust is created, the failure of the particular mode by which its dominant purpose is to be effected will not defeat the charity, but under such circumstances a court of equity will, under the judicial cy pres doctrine, substitute another mode if it may be done within the scope of the donor's dominant purpose. *First Trust Co. v. Thompson*, 147 Neb. 366, 23 N.W.2d 339 (1946).

We have adopted the doctrine of cy pres using the following language from the Restatement (Second) of Trusts § 399 at 297 (1959):

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or

impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

The doctrine of cy pres is a principle of construction based on a judicial finding of the donor's intention as applied to new conditions. *School District v. Wood*, 144 Neb. 241, 13 N.W.2d 153 (1944). The doctrine will not be applied if the donor indicates the gift shall be used for a narrow specific purpose because that would defeat the purpose of the donor. *Id.* But where the specific purpose recited cannot be accomplished because of changed conditions, and a more general charitable purpose is shown by the will, the cy pres doctrine may be resorted to, not to defeat the donor's intention, but to effectuate it. *Id.* Cy pres does not apply, however, until it clearly appears that the will or wish of the donor cannot be given effect. *In re Estate of Harrington*, 151 Neb. 81, 36 N.W.2d 577 (1949).

Here, the record does not clearly show that the purpose of the trusts cannot be given effect. The trusts' purposes are not impossible to carry out, nor are they illegal; the record does not support a conclusion that their purposes have been made impracticable. The Foundation pled that because of changes in the financial aid arena, students are reluctant to pursue loans from multiple sources because federal loans are available at competitive rates. But witnesses for the Foundation admitted that they were unaware of specific changes that caused fewer students to seek loans from the trusts. The record also shows that the Foundation can change the loan terms to make them more desirable. Thus, if students are seeking federal loans because of more favorable terms, the Foundation has the power to change the trusts' loan terms that will make them more desirable than the federal loans. As one court has noted:

> There may well be a greater need for scholarship funds than for loans. Perhaps greater social good can be accomplished by using these funds for direct grants to students, but it is not for this or any court to determine the relative wisdom of a bequest and to substitute its judgment for that

of the testator. The function of the court is to probate wills and not to write them.

*Estate of Berry*, 29 Wis. 2d 506, 517, 139 N.W.2d 72, 78 (1966). Because the ultimate purpose of the trusts have not become impossible, impracticable, or illegal, the doctrine of cy pres does not apply.

■ Relying in part on *Sendak v. Trustees of Purdue Univ.*, 151 Ind. App. 372, 279 N.E.2d 840 (1972), the Foundation argues that if cy pres does not apply, the doctrine of deviation should apply. We have recognized that deviation is another equitable principle applicable to charitable trusts. See, *Wood v. Lincoln General Hospital Assn.*, 205 Neb. 576, 288 N.W.2d 735 (1980); Restatement (Second) of Trusts § 381 (1959). The deviation doctrine is applicable to make changes in how a charitable trust is administered, while cy pres is used where a change of the settlor's specific charitable purpose is involved. *Wood v. Lincoln General Hospital Assn., supra.*

For example, in *Sendak*, the terms of a charitable trust provided for loans to students up to $500. The record contained evidence that when the trust was created, the restrictions on the loans were more lenient than the restrictions on loans provided by Purdue University. The record also contained evidence that the cost of education and the amount of assistance needed by students had risen dramatically since the time the trust was created and that the trust was accumulating unused assets. The court determined that the doctrine of cy pres was not applicable because the purpose of the trust had not become impossible, impractical, or illegal. But the court applied the deviation doctrine to

permit the trustees to deviate from the mechanical means of administration of the trust where circumstances not known or foreseen by the testator have come about, and where such change in circumstances in combination with the administrative means provided in the trust would defeat or substantially impair the accomplishment of the intended trust purpose.

*Sendak v. Trustees of Purdue Univ.*, 151 Ind. App. at 379-80, 279 N.E.2d at 845. Under the doctrine, the court removed restrictions on the amount of the loans and who they could be given to, but the ultimate purpose of the trust to provide loans was not changed.

Here, nothing in the wills indicates that the use of the trusts for loans is a matter of administration. Instead, the ultimate purposes of the trusts are to provide loans to students. The Foundation seeks to change the ultimate purposes of the trusts by allowing them to provide scholarships. Because this is an attempt to change the ultimate purposes of the trusts, the doctrine of deviation, which applies to trust administration, does not apply.

The Foundation contends that the trusts' purposes will not be changed because they will be used first for loans and scholarships will be given only after all loan funds are disbursed. But the record fails to show that all or more of the funds cannot be used for loans. As previously discussed, the Foundation may change the loan terms. We are unwilling to allow a change affecting the ultimate purposes of the trusts when those purposes might be carried out through changes in the terms of the loans. We conclude that under the application, the deviation doctrine is inappropriate.

We conclude that the doctrines of cy pres and deviation do not apply. Accordingly, we affirm.

AFFIRMED.

WRIGHT and STEPHAN, JJ., not participating.