LOUIS C. D. STORK ET AL., APPELLEES, V. EVANGELICAL. LUTHERAN SYNOD ET AL., APPELLANTS.

FILED JUNE 14, 1935. No. 29094.

312

*Fradenburg, Stalmaster & Beber, O. T. Doerr* and *P. M. Klutznick,* for appellants.

*Courtright, Sidner, Lee & Gunderson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

Frederic W. Smith died testate in 1931, leaving a widow, Emma M. C. N. Smith, and brothers, sisters, nieces and nephews, as his heirs. He owned a considerable estate, and the title to his real estate is in dispute in this action. The widow died intestate in 1932, leaving as her heirs her brothers and sisters, who are plaintiffs in this action. The will of Frederic W. Smith has been duly probated and all debts, allowances and expenses of administration of his estate have been paid, and the estate is now ready for distribution and for partition.

The will of Frederic W. Smith provided in part as follows:

"All the residue of my estate, real, personal and mixed property, wherever it may be found, and of whatsoever it may consist, I give, devise and bequeath unto the German Evangelical Lutheran Synod of St. Louis, Ohio, and other states, and its heirs, to be used by said society as

follows: One-third of this gift shall be used for the education of students of theology at its schools, who have no money to pay for their attendance at school; one-third for the repairs to its schools and the other third for foreign missionary work."

The plaintiffs bring this action to quiet title to said real estate in them and the heirs of Frederic W. Smith and ask for an accounting and partition of said real estate and for general equitable relief. The plaintiffs allege in their petition that said Synod was at the time the will was made and at all times a foreign corporation and not incorporated under the laws of Nebraska, and is incompetent to take the title or the beneficial interest in said real estate, and that said attempted devise is a nullity and the title to said real estate belongs to plaintiffs and the heirs of Frederic W. Smith as an undevised estate.

For answer to the petition, the appellant Synod alleges that said Frederic W. Smith devised in said will his real estate in trust for certain religious and charitable purposes, and that it is a corporation not incorporated under the laws of Nebraska, and that it is organized for religious purposes to carry on a religious work, including the maintaining of schools for the education of candidates to the ministry and students of theology, and that some of such students are indigent and that the expense of their education must be paid by the defendant or persons interested in the work of the Synod, and that said defendant maintains schools for the education of teachers of parochial schools, and to carry out this purpose that defendant erects, maintains and operates schools, and that said defendant supervises and conducts a missionary work in this country and in foreign countries and carries on generally the work of church organizations, and that the beneficiaries of the service and the work of said Synod are an uncertain and indefinite class until they have been selected by the board in charge of such work or services, or by the triennial meeting of the Synod, to be such beneficiaries. The defendant prays that the court find and decree

that said will established a charitable trust for the above purpose, and that the court find and decree that the Synod is incompetent to take as a trustee for said purposes and trust, and that the court name a trustee to carry out said purposes and trust.

Trial was had to the court and evidence was introduced showing the amount of funds in the hands of the executor, and the articles of incorporation, constitution and by-laws of the Synod.

The objects of the Synod are stated in article 2 of the articles of incorporation filed in the state of Missouri as follows:

"The object of this association shall be to unite in a corporate body the members of the Evangelical Lutheran Church who remain true to, and acknowledge as a true exhibition of sound Christian doctrine, the Book of Concord of the year of our Lord fifteen hundred and eighty; to receive, acquire, hold, manage, and control the real and personal property and franchises which may hereafter be acquired by this corporation and such as have heretofore been obtained and are now held by different educational corporations, under its direction and for its advancement, and to continue and perpetuate the good work of disseminating the Gospel throughout the world."

In the constitution of the Synod the objects are stated as follows:

"1.   The conservation and promotion of the unity of the true faith (Eph. 4, 3-6; 1 Cor. 1, 10) and a united defense against schism and sectarianism (Rom. 16, 17);

"2.   The joint extension of the Kingdom of God;

"3.   The training of ministers and teachers for service in the Evangelical Lutheran Church;

"4.   The publication and distribution of Bibles, church-books, school-books, religious periodicals, and other books and literature;

"5.   The endeavor to bring about the largest possible uniformity in church-practice, church-customs, and, in general, in congregational affairs;

"6. The furtherance of Christian parochial schools, and of a thorough instruction for confirmation;

"7. The supervision of the ministers and teachers of the Synod with regard to the performance of their official duties;

"8. The protection of pastors, teachers, and congregations in the performance of their duties and the maintenance of their rights."

The trial court found that the appellant Synod had no interest in the real estate and quieted the title of the same against the appellant and in the plaintiff and appointed a referee to sell the real estate. This appeal was taken by the Synod from said decree.

It is an established principle of the courts of this state to carry out the intent and purpose of the testator where the same are within the rules of law. In this case the intention of the testator is plain and undisputed and ought to be carried out, unless to do so would violate some positive rule of law.

The appellant Synod contends:

1. That the will establishes a religious and charitable trust.

2. That, if the trustee is incompetent to take such a trust, a court of equity will appoint a trustee to carry out the purposes of the trust.

3. That the beneficiary of the trust is not the Synod, but those mentioned in the will who are ultimately to recover the benefits, and that section 76-502, Comp. St. 1929, has no effect on such a beneficiary of a charitable devise.

The appellees contend:

1. That under the will the Synod is the title holder and beneficiary, and that said statute prohibits it from receiving the devise, and that the heirs take the same.

2. That, when a devise is devised to a corporation for the objects for which the corporation is organized, it is then a devise to the corporation itself, and that there is in such a case no separation of the legal from the beneficial enjoyment of the estate, and that such a separation is.

necessary in a public or charitable trust in order that the beneficiary may demand its performance.

In the instant case a charitable or religious trust is established. 5 R. C. L. 291, sec. 2, defines such trust:

"But it is certain that in legal parlance the word 'charity' has a much wider significance than in common speech. Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their heirs under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

At 11 C. J. 316, is the following language:

"Gifts for schools and scholars * * * and gifts for the advancement of learning and science * * * are regarded as charities. Gifts of this nature * * * have been regarded by the courts of this country with special favor." Also, at page 320: "Both before and since the enactment of the statute of 43 Elizabeth, it has been and is a general rule that a gift for a religious purpose is one for a charitable purpose."

In *De Camp v. Dobbins*, 29 N. J. Eq. 36, the definition is given as follows: "A religious purpose is a charitable purpose."

In *Hitchcock v. Board of Home Missions*, 259 Ill. 288, the gift was to "Home Missions and Foreign Mission and for education of poor children," and was held by the Illinois court to be a charitable trust, and the selection of the particular beneficiaries should be left to the trustee appointed by the court, since none was appointed in the will.

In *In re Estate of Douglass*, 94 Neb. 280, real estate was devised to the First Congregational Church at Seward,

Nebraska, to be used by said church society as a parsonage. This court held that the gift by will of a parsonage, together with the lots upon which it is situated, is a donation to a public charity and was a gift to a charitable purpose.

In *Elliott v. Quinn*, 109 Neb. 5, the testator by will provided that his real estate should become a part of the school fund of Clay county. The contestants argued that there is no fund in which the proceeds of the sale of the land might be placed, and that the devise is vague, uncertain and impossible of performance. It was also argued that the will lacked a fixed beneficiary and the use is indefinite. This court said: "We do not think defendants' argument is sound. The object of the devise is charitable, and the property devised is certain and definite and the beneficiary is certain and definite as to the class."

In *In re Estate of Secrest*, 109 Neb. 431, the will left certain property to his executor for the purpose of building and maintaining a public library in Hebron, Nebraska, and directed that certain funds be paid to the directors of the city public library association. In the opinion this court said: "Such an institution falls within the class of public charities, which are favorites of the court (citing authorities). To hold otherwise would defeat the beneficent intention and desire of the maker of the will. This we will not do unless compelled thereto by manifest defects in the will, or illegality in its execution."

In *In re Estate of Nilson*, 81 Neb. 809, there was a bequest by a testator, who was a native of an island of Norway, to a church congregation of the island, which body is by the laws of that Kingdom capable of receiving such bequest, of a sum of money to be invested, and the income therefrom distributed annually "to worthy and needy servant girls and the widows and orphans óf deceased sailors and fishermen who are not a public charge," and appointing three parish officers to carry out the provisions of the bequest. This court held that the will created a charitable trust, and is sufficiently definite as to its object, the trustee and beneficiary, so that it would be upheld.

Section 6273, Rev. St. 1913, before it was amended, read as follows: "Nonresident aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise."

In 1921 (Laws 1921, ch. 142), the above section was amended and is now as follows: "Aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any land, or real estate, or any leasehold interest extending for a period for more than five years or any other greater interest less than fee in any land, or real estate in this state by descent, devise, purchase or otherwise." Comp. St. 1929, sec. 76-502.

It is the public policy of this state under the above statute that it is unlawful for either a private or charitable corporation not organized in this state to take the fee title or to act as trustee for another.

In 1918 this court had before it the case of *Gould v. Board of Home Missions,* 102 Neb. 526, wherein the testatrix devised to a foreign corporation certain real estate "to be appropriated and applied for the use and benefit of the Woman's Board of Home Missions of the Presbyterian Church in the United States of America." The lower court held this provision in the will void, and the title was quieted in the heir at law to the real estate devised. On appeal to this court this decree was reversed. The heir contended, as is contended by the appellees here, that the statute prohibited such foreign corporation from taking or holding real estate in Nebraska, and that the title vested in the heir, and that a charitable trust was not created. The syllabi of this court in that case on this question are clear and unequivocal and we can do no better than to quote part of them:

"Under section 6273, Rev. St. 1913 (section 76-502, Comp. St. 1929), corporations not incorporated under the law of the state of Nebraska are prohibited from taking

or holding lands in this state in trust for the use and benefit of another."

"The will under consideration devised to the defendant, a foreign corporation, the real estate in controversy 'to be appropriated and applied for the use and benefit of the Woman's Board of Home Missions of the Presbyterian Church in the United States of America.' *Held,* that the quoted words denote a charitable trust or use for a religious purpose, the beneficiaries of which are uncertain and indefinite until they are selected or appointed to be the particular beneficiaries of the trust for the time being.

"A valid charitable trust created by will will not be permitted to fail because the trustee named therein is incompetent to take title to the real estate, but the court will appoint a competent trustee."

So it is clear that in this state a foreign corporation cannot take title to real estate, nor act as trustee. After reaching the above conclusion the court in the *Gould* case states as follows: "It follows that the trustee cannot take. Does it also follow that the will is void, and that the trust or use intended must fail?" This question was answered in the negative. It is now for us to determine what, if any, is the effect of the amendment to the statute in 1921 as to whether or not the court shall appoint a trustee to carry out the purpose of a charitable and religious trust, when the trustee is a foreign corporation, and therefore incompetent to act. The appellees urge in their brief that said amendment to the statute overcame the effect of the decision in the *Gould* case, where the court appointed a trustee to carry out such devise. In the *Gould* case there was no attempt to give the foreign corporation beneficial use, but only the legal title as trustee. This was prohibited under the statute. By the amendment to the statute, a foreign corporation was prohibited from holding, not only the fee title, but any interest greater than a five-year lease or any other greater interest less than fee title. But in the instant case the Synod does not receive any title or interest of any kind. There is no attempt to give the bene-

ficial interest to the Synod, the disqualified corporation, but the testator attempted to give the Synod the legal title, as trustee to hold and administer it for the *cestuis que trustent*, who in this case are an indefinite number of persons, who own the beneficial interest or use. So we think that the amendment of the statute in no way changed the force of the holding of this court in the *Gould* case. The ultimate beneficiaries of a charitable or religious trust are not affected by the amendment to the statute. If the testator had given the real estate to the Synod without impressing upon it a charitable trust, the heirs would have taken it. But since the testator did not give the real estate in fee to the Synod, nor did it give the beneficial use to the Synod, but gave the legal title to the Synod to hold as a charitable trust, and the Synod is disqualified to act as such trustee, then this court is bound to follow the *Gould* case and provide for the appointment of a trustee.

This holding of this court that equity will not permit a charitable trust to fail for want of a competent trustee, but will appoint a trustee to administer it, is in line with the great majority of holdings in other jurisdictions.

Thus, in *Burke v. Burke,* 259 Ill. 262, the Illinois supreme court held that a charitable trust was not invalidated by reason of the fact that an unincorporated religious society was made the trustee. In this case the gift was to a Catholic parish for the erection and support of a school to be erected and maintained by the parish, and a court of equity named a trustee to carry out the trust. In the opinion the following language applies with force to the instant case: "The original and inherent jurisdiction of courts of equity over charities, independent of the statute, is now recognized in most of the states. Virginia, Maryland and North Carolina are exceptions. In this state deeds made to a rector, church wardens and vestrymen of an unincorporated church for church purposes and to pay the salary of the rector were held not void for want of a grantee capable of taking the deed. * * * Where a gift is made to a charitable use and no donee is named or the

donee named is incapable of taking the property the gift will not fail, but a court of equity may appoint a trustee to carry out the charitable purposes."

5 R. C. L. 309, sec. 23, thus states the rule: "The validity of a charitable trust is not affected by the inability or incapacity of the trustee to act, or by his refusal to do so. Thus when a charitable trust is repugnant to, or inconsistent with, the proper purposes for which the corporation appointed as trustee was created, this furnishes no ground upon which to declare an otherwise unexceptionable trust void. The corporation cannot be compelled to execute it, and the intervention of the proper court may be required to appoint a new trustee in order to enforce and perfect the trust; but a court of equity will enforce it, nevertheless."

In *Hitchcock v. Board of Home Missions,* 259 Ill. 288, there was a devise of the residue of the estate "to be equally divided between Home Missions and Foreign Mission and for education of poor children." The contestants, among other things, objected that the gifts are invalid because no scheme or plan for carrying out the charity is presented by the testatrix, no trustee appointed by her, and no trust declared by the will; that the courts of that state have no power to exercise the prerogative rights of the king or *parens patriæ,* and cannot, under the *cy pres* doctrine, appoint a trustee to receive gifts. The court in a well-reasoned opinion, citing many cases, held that, although no trustee is appointed with power to select the beneficiary from the class so designated, the trust will not for that reason fail, but will be administered by a trustee appointed by a court of chancery. The court also held that to sustain the gift to a charity does not require the exercise of any prerogative power of the nature sometimes exercised in England, but requires only the exercise of the ordinary jurisdiction of a court of chancery. This is the law of this state. *In re Estate of Nilson, supra.*

The supreme court of Massachusetts in a comparatively late case reviews the authorities in *Chase v. Dickey,* 212

Mass. 555, in construing the will of Mary Baker Eddy, the founder of Christian Science. Mrs. Eddy devised the greater part of her estate in trust to the Northern Church so that the income could be used to repair certain buildings and to promote the extending of Christian Science as taught by herself, and directed that the "Mother Church—the First Church of Christ, Scientist, in Boston, Massachusetts, in trust for the following general purposes * * * more effectually promoting and extending the religion of Christian Science as taught by me." The devisee was not permitted under its charter to accept that amount of money, and the heirs claimed the devise was void. The court in overruling this contention say:

"The facts disclosed on the record and appearing in the will do not lead to the conclusion that the intent of the testatrix was fixed on the donee named so profoundly that, if the donee fails, the gift fails. The purpose of the gift and the trustee are not so inextricably combined that they must stand or fall together. The support of a branch of the Christian religion being the declared purpose of the trust and this being a public charity, the gift will stand unless it appears that the discretion of the particular trustee named is of its essence. There is disclosed no exceptional reliance upon the particular corporation named beyond that which appears commonly. The establishment of the trust does not seem to depend upon the particular instrument or execution nominated in the will. It is the not unusual case of a plain charitable intent, where the legatee is incapable of taking, and the trust is not permitted to fail for lack of a trustee. * * * *Winslow v. Cummings*, 3 Cush. 358; *Richardson v. Mullery*, 200 Mass. 247. It does not fall within the class of cases where the administration of the trust is of its essence, and where it cannot be administered in any other way than that pointed out in the will."

In *Chapin v. School District*, 35 N. H. 445, Horace Chapin devised, "for and in consideration of helping to support and maintain a school for the purpose of teaching the art

of reading, writing and arithmetic, in the second school district in the town of Winchester," conveyed "unto that part of the inhabitants of Winchester aforesaid * * * for the sole purpose of supporting a school, as above said," 40 acres of real estate. The heirs of the testator sought to declare this devise void on the ground that said inhabitants could not act as trustee for the school district. The court held the grant was for charitable purposes and was good.

In a late case the supreme court of Colorado, in *Haggin v. International Trust Co.*, 69 Colo. 135, had before it a will that devised to the city of Denver to act as trustee in the erection of a memorial arch. The city of Denver under the charter could not so act as trustee. At the outset of the opinion Judge Scott said he approved a former opinion of the Colorado court wherein it stated: "The decisions in the United States * * * cannot be reconciled." *Clayton v. Hallett*, 30 Colo. 231. He also stated that courts had original inherent jurisdiction over charitable gifts and trusts, and that a devise to a charity is not rendered invalid because trustees are not named, nor because a trustee who is incapable of taking it is named. The decision reviews the authorities extensively.

In *Lightfoot v. Poindexter*, 199 S. W. (Tex. Civ. App.) 1152, the court considers this question: The testatrix made a bequest to Daniel Baker College of Brownwood, Texas, and after several bequests she devised the residue of her estate to Daniel Baker College to be used for the education of the youth of Brown county, Texas. It was contended that the bequest was void for the reason that Daniel Baker College could not under its charter act as trustee of a religious trust, and that it would be difficult to determine which college was meant. The court followed the rule announced in the foregoing cases in the following language:

"But at last it could profit the appellants in the case nothing, and they would not be heard to complain, if it should be held that the gift to Daniel Baker College is void for any reason, because the gift in the will is a charity,

for the reason that it is made for the purpose of giving education to the youth of Brown county, and the manner in which this purpose shall be carried out is specifically stated in the will, and Daniel Baker College is merely the medium, under the provisions of the will, by which the charity is to be dispensed, or, in other words, Daniel Baker College is merely the trustee, and the youths of Brown county are the beneficiaries. Therefore the will creates a charitable trust, and if for any reason Daniel Baker College cannot take as trustee, the trust will not fail, because equity will not suffer it to fail for want of a trustee. Under the universal rule in this country and in England, when a charitable trust has been created and there is a failure of the trustee for any reason, a court of equity, having jurisdiction, will take charge of the trust and administer the same under a trustee appointed by it."

The supreme court of Iowa has taken the same view. In *In re Estate of Crawford*, 148 Ia. 60, there was a gift for the Salvation Army. That body was given no power or authority to take it out of the state and the trustee named was the Burlington, Iowa, branch of the Salvation Army.

So it is a rule of this court, as well as the majority of other state courts, that a charitable trust will not fail because the trustee is incompetent to take charge of it.

However, it is urged that where the will bequeaths title directly to a corporation there is no trust, even though the will provides that title is given in trust, if the directions for the use of the trust estate are within the legitimate scope of the purposes of the grantee, and that the devise or conveyance vests title absolutely free from any trust. Undoubtedly this is true where the devise is for private purposes or gain or a business trust. If a devise is made for a private purpose to a corporation, incompetent to take, the same is void under our statute, and the heir at law would take the devise as undevised real estate. But this rule does not apply to charitable or religious trusts, where an incompetent corporation is made trustee, by the holdings of the large majority of courts. The

Maryland court seems to hold the contrary, but this holding seems to be based on the early decisions of the Maryland court holding that the devisees or beneficial holders must be definite and certain in a charitable trust as well as in a private trust. The result of these holdings was in most cases that when a charitable trust was created it was held void for being indefinite as to beneficiaries who could demand execution of the trust. But the Maryland courts desired to carry out the intent of the testator, the same as the courts of other states, and, it seems, that in order to avoid these early decisions, held that such devises were not in trust, but on condition. So the same purpose was attained as in other states in permitting the intention of the testator to be carried out. But in most of the cases where it was declared not to be a trust, the intention of the testator was carried out, but by another name than in Nebraska and a large number of other states. In the instant case the appellees do not desire the intention of the testator carried out, but in order to defeat the intention of the testator contend for only that part of the Maryland rule which declares the devise not a charitable trust.

The fact that Maryland and a few other courts hold that a charitable trust is not enforceable because the beneficiary is not definite is not approved in this state. This court with a majority of the courts recognizes that the decisions of Maryland are the exception. In the case of *St. James Orphan Asylum v. Shelby*, 60 Neb. 796, this court, after discussing the opinion of an early New York case (*Tilden v. Green*, 130 N. Y. 29), which holds that the beneficiaries of a charitable trust must be definite, does not approve the Maryland rule, and says:

"The opinions of the courts of Virginia, Maryland and perhaps some other states, are in the main in harmony with those of New York. * * * The bequest is sanctioned by law and contravenes no public policy. Its invalidity can be declared only by the adoption of a doctrine at variance with the great weight of authority, to wit, that the beneficiaries shall be so certain that they may come into

court claiming the benefits of the trust, and demand its execution. We do not think this doctrine should be adopted in this state, and hence hold to the view that where a bequest for a charitable purpose, though entirely general and uncertain in its character, is made to a trustee who is empowered to select the object of the charity, and who is willing to or has accepted the trust, the will will not be declared invalid because of the general nature of the object or objects of the charity."

The supreme court of Missouri in 1927 in *In re Estate of Rahn,* 316 Mo. 492, holds to the majority rule. Jacob Rahn made a bequest "to the German Red Cross Society, of the Empire of Germany, in Europe, * * * to be by said German Red Cross Society received and by it applied and paid out for the then immediate relief, use and benefit of the then widows, orphans, and invalids, * * * under the then care and charge of said German Red Cross Society, aforesaid, resulting from the war now going on in Europe; * * * to be * * * paid * * * to the then * * * Imperial German Consul, of Germany * * * at St. Louis." There was in Germany, at the time of testator's death, a national organization known as the Central Committee of the German Society of the Red Cross, one of whose expressed purposes was to render aid to needy widows, orphans and invalids who might become objects of charity as a result of the war, said Central Committee after his death and before his express intention could be carried out being succeeded by a corporation named the German Red Cross. The court held that a bequest was created, not only to a sufficiently identified donee or trustee, but was one which falls within the exact definition of a public charity, and in both respects is valid according to the established rules governing charitable trusts, and is to be paid to and administered by the succeeding corporation.

The following cases also sustain these principles: *Eccles v. Rhode Island Hospital Trust Co.,* 90 Conn. 592; *Sheldon v. Chappell,* 47 Hun (N. Y.) 59; *Hagen v. Sacrison,* 19 N. Dak. 160.

It may be asked who is intended as the beneficiary. This may be determined from the context of the will, or by parol evidence of the surrounding circumstances and from the Synod. The question is answered in 11 C. J. 343, as follows: "In case of * * * ambiguity in the description of the beneficiaries of a charitable gift or trust, making it difficult to ascertain and identify them, the court may consider the whole instrument, and may admit parol evidence as to the surrounding circumstances."

In *American Bible Society v. American Tract Society,* 62 N. J. Eq. 219, is the following language: "It is contended, however, that a devise of realty differs from a bequest of personalty—first, because, in the case of a devise, there is no person in whom the legal title may vest. * * * The first point seems to be without substance, for the reason that, assuming the devise to be in other respects valid, the legal title, if it cannot vest in the society, descends to the heir-at-law charged with the charitable use." And further in the opinion it states: "But, by necessary implication, a gift to the society is a gift in trust for its proper objects."

In *Glover v. Baker,* 76 N. H. 393, a gift of property to a church in trust for the repair of the church and church buildings and other church purposes was held to be a gift for religious purposes, and not a gift to the church.

The following pertinent language is used in the *Gould* case, *supra*: "True, as stated in plaintiff's brief, the board mentioned 'are not persons or individuals that cannot be pointed out,' and hence, it is argued, the requirement of uncertainty for a charitable trust is wanting. But would it not be strained construction of this language to hold that it means the individuals constituting the board are to be the beneficiaries? Must we not, in the absence of any allegation to the contrary, presume from this language that there is such a board in existence, and that the members of it are not the actual beneficiaries of funds coming into their hands?"

Nor is it necessary that there be a beneficiary named in

the will who can demand a performance of the charitable trust created by the will. The case of *Woman's Foreign Missionary Society v. Mitchell,* 93 Md. 199, and some other Maryland cases, cited by appellees, announcing the principle that a charitable trust is invalid where the objects were uncertain and indefinite, are considered in the late case of *Hobbs v. Board of Education,* 126 Neb. 416, and not upheld. Also therein the same contention was made that a gift to a corporation conditioned upon the use for which said corporation is incorporated makes such a gift absolute, and not a trust. The court held the rule, if correct, did not apply to the charitable trust therein under consideration. In the opinion in the *Hobbs* case the following clear language answers the contention that there is a merger in the instant case:

"This is in its very nature a charitable trust, and to put any other construction upon the instruments evidencing the donations would destroy and render nugatory the benevolent intentions of the donor.

"While it is said in general terms that to create a trust requires the existence of a donor, a trustee, and a *cestui que trust,* there are many cases where charitable trusts have been declared and enforced, notwithstanding the fact that the trustee and the *cestui* may be the same entity, but where the estate has been received by the trustee under certain conditions for certain purposes, on the ground that equity will require the conditions upon which the trustee received the estate be complied with. Among those cases we call attention to *Curtis & Barker v. Central University,* 188 Ia. 300. In that case about $52,000 was given to the university. * * * After saying 'The donation clearly creates a trust, which required that the principal should be held intact, and the interest used. It was to be held as a permanent fund'—the court held against the contention of appellant that where the trustee and *cestui que trust* are the same, the title merges, saying: 'But it does not necessarily follow that, under all circumstances, the union of the two estates, even if there is such a union in this case, works

a merger. If there is a reason for keeping the estates separate, or if it is necessary to do so to carry out the purposes and intentions of the donors, equity will prevent a merger. *Sherlock v. Thompson*, 167 Ia.. 1. Here the instrument making the donation and stating the conditions thereof reserved in the donors an interest and created a trust for the benefit of the college and for their own benefit. To hold that there was a merger would nullify the purposes and intentions of the donors, and destroy the power to create conditions or a reversion.' ."

This court views favorably donations by will for charitable purposes and will carry them into effect where there is no violation of the rules of law. *St. James Orphan Asylum v. Shelby, supra; In re Estate of Nilson, supra.*

It follows that the district court erred in entering a decree for the plaintiff. The judgment of the district court is reversed and set aside and the cause remanded and the court instructed to enter a decree in accordance with this opinion, declaring that a charitable trust was created by paragraph 18 of said will and appointing a trustee to carry out the same under the direction of the court.

REVERSED.