IN RE ESTATE OF MARY BOWER HARRINGTON, DECEASED. THE PRESBYTERIAN THEOLOGICAL SEMINARY AT OMAHA, A CORPORATION, APPELLEE, v. ARTHUR S. HARRINGTON, EXECUTOR OF THE ESTATE OF MARY BOWER HARRINGTON, DECEASED, APPELLEE, IMPLEADED WITH BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, APPELLANT.

36 N. W. 2d 577

Filed April 1, 1949. No. 32578.

*Will H. Thompson,* for appellant.

*Morsman & Maxwell* and *Barton, Barton & Colwell,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On October 28, 1930, George A. Harrington and Mary Bower Harrington, husband and wife, executed a joint will. Insofar as important here, the will provided: "In sincere appreciation of the love of God, our Heavenly Father, in permitting us to enjoy the conforts of life, and with a hope that we shall be able to leave at our death some of that which He has permitted us to accumulate, to benefit others, and desiring to show our appreciation of the wonderful provisions made for us in the Will of our Lord, and Savior, Jesus Christ, in making us heirs of God and joint heirs with Him, we GEORGE A. HAR-RINGTON AND MARY BOWER HARRINGTON, husband and wife, of Pawnee City, Nebraska, being of sound mind and memory, do make, publish and declare this to be our joint LAST WILL AND TESTAMENT, hereby revoking all other wills and codicils heretofore made by us or either of us."

The survivor of them was thereafter devised and bequeathed absolutely all property of the first deceased. Upon death of such survivor, the named executor was directed to sell and reduce to money all of his or her property, and, after payment of certain items, the remainder was to be paid and distributed among designated distributees in the shares set opposite their names. The distributees here involved were:

"Two-Fifteenths thereof to the BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH, U. S. A.; * * *.

"One-Fifteenth thereof to the PRESBYTERIAN THEOLOGICAL SEMINARY at Omaha, Nebraska, *if in existence; but if not in existence at the death of the survivor of said testators,* then to said BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH, U. S. A. * * *." The last-quoted paragraph, as italicized by us, is the part of the will in controversy here.

A joint codicil thereto was executed on January 24, 1935, and a codicil disposing of her personal effects was executed by the surviving wife on November 27, 1942. However, neither codicil in any manner affected the aforesaid bequests.

After the death of the husband the joint will and codicil were admitted to probate as his will on October 19, 1939. Thereafter, on July 27, 1946, following the death of the wife on June 23, 1946, the joint will and codicil, and her codicil thereto, were admitted to probate as her will.

On April 26, 1947, prior to final decree, the Board of National Missions of the Presbyterian Church, U. S. A., hereinafter called defendant, filed an application and showing, praying for distribution of the one-fifteenth interest to it as legatee, primarily upon the ground that at the death of the survivor, the Presbyterian Theological Seminary at Omaha, hereinafter called plaintiff, was not in existence within the meaning of the will.

After hearing upon issues thus presented, the county court in its final decree filed April 30, 1947, found generally for defendant and adjudged that plaintiff "at the date of the death of said testatrix, June 23, 1946, was a corporate entity, but was not then operating a theological seminary at Omaha, Nebraska; that its school had been closed for several years; that the disposition of its trust funds and endowments have been in litigation in the District Court of Douglas County, Nebraska; and at the date of the death of said testatrix said Presbyterian Theological Seminary at Omaha, Nebraska, was not in existence within the meaning of the word as used in said will; and that the clear intent and desire of said testators, as set forth in said will, is that said one-fifteenth interest in said residue, towit, $2792.82, shall be paid to, and the court finds that it should be paid to said BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH, U. S. A., * * *."

Plaintiff appealed therefrom to the district court, where the issues presented by plaintiff's petition, substantially reciting salient facts hereinafter set forth, and defendant's answer thereto, were decided in the light of a written stipulation of undisputed facts, entered into by the parties and offered in evidence by the plaintiff. The trial court, in its decree, reversed the judgment of the county court and found generally for plaintiff at defendant's costs. Motion for new trial was overruled, and defendant appealed, assigning substantially that the judgment was contrary to law and not sustained by the undisputed evidence. We sustain those assignments.

The stipulation of the parties discloses that on March 13, 1895, an application was filed by plaintiff in the probate court of Douglas County, in conformity with what is now section 21-701, et seq., R. S. 1943, to form a body corporate under the name and style of "The Presbyterian Theological Seminary at Omaha." As stated in the application: "The object of such corporation shall be to establish and maintain in Omaha, Douglas County,

Nebraska, a theological seminary to be connected with and under the jurisdiction and control of the General Assembly of the Presbyterian Church in the United States of America. * * * the object and purpose for which this association is formed and to be incorporated is the professional and ecclesiastical education of candidates for the christian ministry according to the faith and doctrines set forth in the standards of the Presbyterian Church of the United States of America as now or hereafter interperted by its General Assembly."

Appraisers were appointed as prayed, who duly made favorable return of the assets of the proposed corporation and the probate judge by order granted plaintiff permission to file articles of association and become a religious and educational body corporate, in conformity with the statutes. Articles of incorporation were duly prepared and filed of record, which articles reflected the aforesaid name, location, functions, objects, and purposes under amenable jurisdiction and control of the General Assembly.

The articles provided for a board of directors having power to elect officers, fill vacancies, create an executive committee, "elect and transfer professors, lecturers, instructors and such other officers and agents as may be necessary," and fix their compensation. The board had power to enact by-laws in accordance with the terms and provisions of the charter, which also provided for a seal bearing upon its face the words "The Presbyterian Theological Seminary at Omaha."

The corporation, by and through its directors and officers, had power to invest and dispose of its funds and property "unless otherwise prevented by the terms and conditions by which it became seized and possessed of said property, in each and every case, however, for the sole use of said Seminary and the promotion of the objects for which it is established, and in conformity to the provisions of these articles."

In order to give the Presbyterian Church in the United

States of America power to exercise proper control over the teachings and property of the corporation, it was provided that: "All funds and property of every name and nature, and the income and proceeds thereof, which may at any time belong to, or be held by the said 'The Presbyterian Theological Seminary at Omaha,' shall be held by it in trust for the Presbyterian Church in the United States of America, and be used only for theological education in the faith and doctrine set forth in the standards of the Presbyterian Church in the United States of America, as now or hereinafter interpreted by its General Assembly, and for no other purpose, and this provision governing all said funds or property shall be irrevokable and inviolable."

The election of every director, and the election, appointment, or transfer of every professor, instructor, or teacher, who were each required to be ministers or members in good standing of the Presbyterian Church in the United States of America, were subject to approval of the next succeeding General Assembly. Power and authority were given and granted to such church "to provide, through and by its General Assembly, at any meeting thereof, such manner and means as said General Assembly may deem wise and prudent for the enforcement of the provisions of these articles of incorporation, and may do so in the name of such person or corporation as it may direct by resolution certified by its clerk in any civil court having jurisdiction over this corporation or its property." By-laws were duly adopted, but they are of no importance here.

In May 1943, the General Assembly adopted the recommendations of its Special Committee on Theological Education "to the effect that plaintiff's said seminary in its location in said City of Omaha, with the type of program theretofore carried on, and as a seaparate institution, should be discontinued, and further, that a joint committee, composed of the Board of Directors of plaintiff and said Special Committee, should explore and study the

possibilities of using the assets owned by plaintiff and used in connection with said seminary, for the furtherance of theological education * * *" elsewhere, and report back in 1944.

Thereafter, at a meeting of said joint committee on June 29, 1943, a subcommittee of six, consisting of three from plaintiff's board of directors and three from the General Assembly's special committee, was appointed "to explore the possibilities of properly liquidating the affairs of this plaintiff in accordance with the action taken by said General Assembly" because of which "it became and was and is now impossible for this plaintiff to further carry on and conduct its said seminary in the instruction of candidates for the christian ministry in their professional and ecclesiastical education therefor, and by reason thereof, the educational work of said seminary was discontinued by this plaintiff at the close of the school year in 1943, and the doors of plaintiff's said seminary were then closed in conformity with the action taken by said General Assembly."

Thereafter, in February 1944, the special committee recommended to plaintiff's board of directors: "That plaintiff's assets owned, and used by it in connection with its operation and maintenance of its said seminary, should remain in the custody of plaintiff" but that "the net income from such assets should be sent to * * * McCormick Theological Seminary in Chicago, to be used for special training of the ministry of the rural church, and with particular reference to the needs of the Middle West." The Chicago seminary was to "report annually as to the use of these funds to plaintiff and to said General Assembly" and "at the expiration of ten years, the General Assembly should restudy the matter and make such changes as might then seem advisable."

Plaintiff's board of directors, upon consideration of said recommendations, voted to amend same, reducing the period of time to five years instead of ten, and to provide "that all actions which might be taken in connection

therewith should be subject to the approval of the courts having proper jurisdiction thereof * * *." All such recommendations, with proposed amendments thereto, were thereafter submitted to, and as amended, were adopted by the General Assembly in May 1944.

In conformity therewith and predicated upon the foregoing admitted facts, recited in its petition therein, plaintiff, on December 9, 1944, filed a class action under section 25-319, R. S. 1943, in the district court for Douglas County, naming as defendants the following persons, to wit: The Attorney General, as the person charged with the duty of supervising and protecting charitable trusts, certain designated donors of its charitable trusts, and "All persons having or claiming any interest in the property, real and personal, of plaintiff constituting a charitable trust fund of the book value of $430,409.95 for distribution by application of the judicial *cy pres* doctrine, real names unknown * * *."

The Attorney General's answer denied generally, but admitted that plaintiff had possession of a charitable trust subject to the control and direction of the district court for Douglas County, under its equity powers, admitted the existence of the judicial cy pres doctrine as to charitable trusts in this state, but denied its application in the case then at bar, and alleged that if found applicable by the court, said charitable trust funds and property should not be permitted to be withdrawn from this jurisdiction, but should at all times be held subject to the order and direction of the district court. Some designated defendants answered and another party intervened, but the contents of their pleadings do not appear in the record.

That cause was tried on the merits July 23, 1945, whereat intervener and certain named defendants were represented by counsel, while others defaulted, and the cause was continued to permit filing of briefs. Thereafter, on October 19, 1946, the cause was argued and submitted to the court, and on November 13, 1946, the

decree of the court was entered. It found generally for plaintiff and that the allegations of plaintiff's petition were true. It ordered the return of one certain gift, the retention of which would amount to constructive fraud, and two others because of non-claims by plaintiff. However, it denied the return of others, approved retirement allowances for plaintiff's faculty members, and ordered their continued payment.

The decree specifically found that all of plaintiff's other property and funds (except certain described funds) constituted "a charitable trust fund, and that the use and control of said fund by the plaintiff is subject only to the general supervision of the State of Nebraska by and through the Attorney General of this state, and subject to the jurisdiction and judgment of this court in the application by the Court of the judicial *cy pres* doctrine, to be disposed of pursuant to the decree and orders of this Court in its application of said judicial *cy pres* doctrine, and that the title to all of said property constituting the property of the plaintiff effectually passed out of the donors thereof without condition, except as to the use thereof." It also found that "in view of the possibility that within the five-year period some arrangements might be made to re-open the plaintiff seminary, the Court specifically finds that it need not at this time determine any absolute and final disposition of the entire trust fund" but ordered the income therefrom to be delivered annually to the McCormick Theological Seminary at Chicago to be used by it for the purposes set forth in the aforesaid recommendations during the then 1946 fiscal year and four more years, or until further order of the court, with jurisdiction of the subject matter continuously thereafter retained, "to be exercised when and as it may be invoked by any party hereto, including the Attorney General of the State of Nebraska." Motions for new trial were filed by three defendants. They were overruled, but no appeal

was ever taken from that decree, and it has never been modified or vacated.

A department of rural church was established at McCormick Theological Seminary, having a visiting professor and resident instructor, with three courses offered in Chicago at the seminary and four in the extension school at Lincoln, two by the faculty of the Nebraska Agricultural College, and two by the seminary's resident instructor. The income received for 1946 and an accounting for its uses was reported by the Chicago seminary on September 25, 1947.

In the foregoing situation, the question is whether or not plaintiff was in existence on June 23, 1946, the date of the death of testatrix, within the meaning of the provisions of her will. Plaintiff contended that it was in existence simply because it was still a legal corporate entity. On the other hand, defendant argued that when plaintiff admittedly closed its doors, discharged and retired its faculty members, discontinued the objects and purposes for which it was incorporated and the use for which the bequest was given, and sought a decree under the judicial cy pres doctrine because it was impossible to carry out the charitable objects and purposes for which it was incorporated, that it then ceased to exist as a seminary at Omaha within the meaning of the will of testatrix, in which event the bequest should go to defendant. We sustain that contention.

While the intent and wishes of the donor must be determined from the four-corners of the will, it is also the rule that in the construction and determination of the legal effect of donations to charitable corporations, which plaintiff was conceded to be, the objects and purposes for which the donee was incorporated may be considered. 14 C. J. S., Charities, § 11, p. 438. That is true because a gift, donation, or bequest by name, without further restriction or limitation as to use, to a corporation organized and conducted solely for charitable purposes, will be deemed to have been made for

the objects and purposes for which the corporation was organized. 11 C. J., Charities, § 11, p. 307, § 24, p. 320. It is also the rule that a gift to a charitable corporation is equivalent to a bequest to a charitable trust, and will ordinarily be governed by the same rules, because "the want of the trust relation in the former is overcome by the fact that the purpose of the charitable corporation coincides with the charitable purpose of the gift." School District v. Wood, 144 Neb. 241, 13 N. W. 2d 153. In other words, the bequest at bar was in effect a gift to the objects and purposes of plaintiff corporation, and not to the corporation itself. It was in legal effect a charitable donation impressed with a public trust specifically imposed by plaintiff's articles of incorporation. Matter of Phoebe E. Mills, 121 Misc. 147, 200 N. Y. S. 701. Plaintiff was, in the final analysis, simply selected as an agency to carry out the intent and wishes of testatrix, which were in fact the objects and purposes of plaintiff corporation.

Existence means: "That which exists, that which actually is an individual thing; an actuality." 35 C. J. S., Existence, p. 200. Exist means to live, to have life or animation; to be or continue to be, in fact; have actual being; to be in present force, activity, or effect; or a continuing when applied to a condition or situation at a given time. 35 C. J. S., Exist, p. 199; Black's Law Dictionary (2d ed.), p. 464, (3d ed.), p. 722.

Following the logic in In re Hagan's Will, 234 Iowa 1001, 14 N. W. 2d 638, 152 A. L. R. 1296, the language of the will here involved: "One-Fifteenth thereof to the PRESBYTERIAN THEOLOGICAL SEMINARY at Omaha, Nebraska, if in existence; but if not in existence at the death of the survivor of said testators, then to said BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH, U. S. A." means to plaintiff if in existence as a seminary at Omaha, and as such educating candidates for the Christian ministry under the jurisdiction and control of and in conformity with the faith

and doctrines of the General Assembly of the Presbyterian Church of the United States of America at the time of the death of the testatrix, but if not in existence as such an operative charitable educational institution at that time, then to defendant.

In cases cited and relied upon by plaintiff, with one exception distinguishable upon the facts, the donee was at the appointed time continuing to function and carry out the intent and wishes of testator or the objects and purposes of the gift, although even operating under different articles of incorporation or in a different name. None of them were charitable corporations which had admittedly ceased to function and carry out the objects and purposes for which they were formed and had sought and obtained advantage of the benefit of the judicial cy pres doctrine by reason of their inability to do so.

The meat of the matter here is not whether plaintiff was a legal corporate entity at the death of testatrix, but whether or not it was then existing as a seminary, thus carrying out the objects and purposes for which the gift was given. As stated in In re Walter's Estate, 150 Misc. 512, 269 N. Y. S. 400: "The corporation discontinued the conduct and operation of its hospital and clinic and has entirely ceased to function. It is not necessary that the corporation be judicially dissolved to make the gift ineffectual. It is sufficient if the charitable purposes for which it was formed cannot be carried out. Matter of Mills' Will, 121 Misc. 147, 200 N. Y. S. 701. Furthermore, the charitable intentions of the testatrix in making the bequest can no longer be effectuated." See, also, In re Walter's Estate, 150 Misc. 512, 269 N. Y. S. 402.

We conclude that testatrix never intended to give her estate to a mere named non-functioning corporation which, at her death, had admittedly ceased to and was unable to function and carry out the objects and purposes for which it had been incorporated and for which her bequest was given, whose charitable trust property and

funds were under the jurisdiction and control of the state or a court with judicial power already exercised, as plaintiff concedes, to divert its property, including the gift here involved, to another seminary in another city and state. To hold otherwise would alter and make ineffectual the objects and purposes of her gift.

The question before us here is not whether the gift lapsed or should be applied under the judicial cy pres doctrine. Discontinuance of the maintenance and operation of the seminary prevented carrying out the objects and purposes of the gift. The testatrix specifically provided for such a contingency by giving it to defendant in that event. To hold otherwise would also alter the expressed intent and wish of testatrix.

It is elementary that cy pres does not apply until it clearly appears that the will or wish of the donor cannot be given effect, and, of course, the doctrine can have no existence when the donor himself, as in the case at bar, has provided for application of the bequest in the event of failure of the charitable use to which he in the first instance directed that it should be devoted. Hicks Memorial Christian Assn. v. Locke, 178 Ark. 892, 12 S. W. 2d 866; 14 C. J. S., Charities, § 52, p. 516; 11 C. J., Charities, § 77, p. 362; 10 Am. Jur., Charities, § 124, p. 676. To permit plaintiff to recover herein would be a violation of the latter rule.

The mere possibility that plaintiff may re-establish and maintain or operate its seminary at some vague time in the future is not controlling under the foregoing circumstances. The fact is that plaintiff had admittedly ceased to exist as a seminary on the date of the death of the surviving testatrix, and that is the controlling factor.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to enter a judgment for defendant.

REVERSED AND REMANDED WITH DIRECTIONS.