THE BOARD OF TRUSTEES OF YORK COLLEGE AT YORK, NEBRASKA, ET AL., APPELLANTS, V. E. M. CHENEY ET AL., APPELLEES.

63 N. W. 2d 177

Filed March 5, 1954. No. 33509.

*Perry & Ginsburg,* for appellants.

*Clarence S. Beck,* Attorney General, *Homer L. Kyle,* and *John L. Riddell,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellants by this suit seek the aid of equity to have eliminated from a deed a condition therein prohibiting the encumbrance or alienation of real estate constituting the campus of York College at York, Nebraska, and described in and conveyed by the deed to The Board of Trustees of York College at York, Nebraska, in trust for the Church of the United Brethren in Christ for school purposes; to have the title to the real estate quieted in fee simple in the board of trustees for and on behalf of York College with authority to deviate from the terms and conditions of the deed as it was at the time of its delivery to and acceptance by the board of trustees of the college; to mortgage, encumber, and convey the real estate as the trustees believe is advisable for the opera-

tion and support of the college; and to have appellees barred from having or claiming any interest in or to the real estate. The trial court found that no legal reason was shown by appellants for the removal of the restriction in the deed, denied them any relief, and dismissed the case. The parties to this case will be identified as follows: York College at York, Nebraska, as the college; the board of trustees of York College at York, Nebraska, as trustees; Church of the United Brethren in Christ, as the church; The Evangelical United Brethren Church of Dayton, Ohio, as the evangelical church; the County of York, as the county; and E. M. Cheney, as donor or settlor.

The Attorney General of the state was a defendant. He appeared by general demurrer to the petition. It was denied. He elected to stand on his demurrer. There was no appearance in the case by any other defendant. When the case was reached for disposition in the district court all of the defendants were in default but the court required the plaintiffs to introduce evidence of their claims. In this condition of the record appellants are entitled to the advantage of the facts well pleaded and any additional material facts established by the evidence received without objection in testing the legality of the judgment of dismissal. In Eicher v. Eicher, 148 Neb. 173, 26 N. W. 2d 808, it is said: "Under the provisions of section 25-852, R. S. 1943, power is given the court to conform the pleadings to the proof, when the amendment does not substantially change the claim or defense. A judgment based upon such proof will not be reversed for the reason that such amendment has not actually been made. If the evidence, admitted without objection, clearly proves a claim or defense, the pleading will upon appeal be considered amended accordingly."

The facts pleaded by appellants and shown by evidence offered by them are as follows: The college was organized as a corporation on August 26, 1890. Its char-

ter has at all times contained the declaration that its purpose was the promotion of education by the establishment and maintenance of a college at York under the auspices of the church. By amendment dated August 17, 1920, the charter of the college was made to state that the business affairs of the college should be controlled and conducted by a board of trustees. On February 29, 1892, E. M. Cheney, trustee, and his wife conveyed by warranty deed specifically described real estate in York, Nebraska, referred to therein as the York College campus to the board of trustees of York College at York, Nebraska, in trust for the Church of the United Brethren in Christ for school purposes. The deed contained this language: "All the above described property is the York College Campus. No Mortgage shall ever be put upon the Campus or the Buildings thereon, nor shall the same ever be alienated or encumbred (encumbered), and in case this restriction is violated, the property shall revert to the County of York, and the Court of said County shall appoint five trustees to receive and hold said property for school purposes * * *." The deed was delivered to and accepted by the trustees. The college took and has since had possession and occupancy of the real estate and it has been exclusively used as the campus of the college and all its activities have been conducted thereon.

The college has been since its organization an eleemosynary corporation offering education of collegiate grade to all qualified persons who desired to enroll therein. Its principal financial support has been contributed by the public of the city and county of York; the church, the evangelical church, and their members; and affiliated and subordinate organizations throughout the United States. The church from the creation of the college until recent years and the evangelical church thereafter have sponsored and aided the college in the performance of its services to the public in offering education of collegiate grade. The trustees have managed and operated the college under the auspices of the

church in harmony with the grant of the real estate to the trustees. The conveyance of the real estate mentioned above was in effect a grant to a public charity. The maintenance and operation of the college and the grant of the real estate constitute a public charity.

The college has never been self-sustaining. It has been largely financed by donations and contributions. The greater part of these have been made by the members, friends, and the annual conferences of the churches mentioned above. The principal building of the college was known as the administration building. It was constructed and maintained on the campus until the year 1951, when it was totally destroyed by fire. It contained classrooms, library, laboratories, and other facilities for collegiate instruction. The college cannot be maintained and operated unless the destroyed building is replaced. The college does not have resources sufficient to permit it to construct such a building. The church and the members thereof have since about the time of the destruction of the building refused to further contribute to the support and maintenance of the college or to the cost of construction of a new building because they and the conferences of the church claim the trustees do not have sufficient title to the real estate, constituting the campus of the college, to give the trustees authority to raise necessary funds for the maintenance of the college in the future as the necessity therefor arises. It was decided by The Board of Christian Education of the evangelical church on March 28, 1952, that the evangelical church would not sponsor or contribute further to the college unless the restriction in the deed against encumbering or alienating the real estate was eliminated and the title to the real estate conveyed by the deed was quieted in fee simple in the trustees. The college was soon thereafter advised of that conclusion. The absence of the sponsorship of and support by the evangelical church of the college would result in the complete and permanent destruction of the college. The real estate

and improvements thereon are usable only for college purposes. The college has about 200 students. The employed personnel consists of about 40 persons. The college has contributed in a material and desirable way to the educational, economical, cultural, and spiritual welfare of the public and especially to the county and city of York. The destruction of the college would be contrary to the desire and intention of the donor of the real estate conveyed by the deed and inconsistent with the purpose and intent of the public charity created by the donor.

The provisions of the deed were made for the purpose of contributing to the establishment and continuance of a college on the real estate conveyed by it for the benefit of the public generally and specifically for the advantage of the people of the city and county of York, but conditions have changed since the deed was made and the prohibition thereof does not now protect or serve the necessity or best interests of the college but creates the occasion of its destruction. The primary intention of the donor and the persons interested in the real estate as beneficiaries of the trust upon which it was held at the time of execution of the deed was the creation and operation of a college at York sponsored by the church and that intention cannot be carried out unless the restrictions of the deed against encumbering or alienating are removed. The situation confronting the trustees of the college permits and requires the application of the cy pres doctrine and the rules applicable to the administration of a public charitable trust as recognized and enforced in a court of equity.

The Church of the United Brethren in Christ merged with The Evangelical Church and the organization resulting from the merger is The Evangelical United Brethren Church. It is successor in all things to the Church of the United Brethren in Christ and the last-named church has since the merger had no existence.

In an action in which the trustees were plaintiffs and

the county was defendant to have removed the cloud cast upon the title of the trustees to the real estate described herein "by the apparent provision for reverter to the County of York," to quiet title to the real estate in the trustees, and to bar the defendant of any right, title, or interest in or to the real estate a decree was rendered therein by the district court for York County granting the relief asked therein.

The evangelical church has assured the trustees that if the condition contained in the deed of the donor above described prohibiting the trustees from encumbering or alienating the real estate is eliminated the evangelical church will continue its benefactions to and support of the college, will continue indefinitely to make appropriations for and contributions to the college as it and its predecessor have done in the past so that the college may continue its activities as an educational institution at York, Nebraska, and in that event the evangelical church will continue to sponsor the college and will aid it in every way it can within the limits of its capacity, opportunity, and ability.

The amount of the contributions to the operating budget of the college by the evangelical church in the period commencing May 10, 1940, until about the time of the trial of this case September 8, 1953, was $409,373.55. The amount of the contributions for capital improvements made to the college by the evangelical church during about the same period of time was $399,331.96. The contributions from all other sources to the operating budget of the college during that period of time was $94,062.85, and the amount of contributions from all other sources for capital improvements during about that same period of time was $112,559.06. The approximate annual operating budget of the college is from $185,000 to $200,000. The amount thereof required to be raised from sources other than income from students is between $75,000 and $85,000 a year. If the college is to continue this must be contributed by the evangelical

church through what is known as the missions and bene-
volence budget and from local churches and conferences
"out here in the west." It is not possible for the operat-
ing budget of the college to be made available in the ab-
sence of contributions from the church and the church-
affiliated institutions.

The hypothesis of appellants that the trust involved
herein is a charitable trust may be accepted. The con-
veyance of the real estate was to the trustees in trust
for the church for school purposes. The object was to
furnish the college a campus and to assure its establish-
ment and continuance in York under the sponsorship of
the church so that it could and would conduct educa-
tional activities on a collegiate level. The sole object
of the college as declared by its charter was the promo-
tion of education by the establishment and maintenance
of a college in the city of York under the auspices of the
church for school purposes. A gift for school purposes
is a charitable gift. Restatement, Trusts, § 348, p. 1095,
says: "A charitable trust is a fiduciary relationship
with respect to property arising as a result of a mani-
festation of an intention to create it, and subjecting the
person by whom the property is held to equitable duties
to deal with the property for a charitable purpose."
This is of small importance in this case because a gift
upon condition to a charitable corporation to promote
its purposes is governed by the same principles as a
gift upon a charitable trust. Therefore such a gift to
a charitable corporation is equivalent to a gift upon a
charitable trust and is governed by the same rules. In
re Estate of Harrington, 151 Neb. 81, 36 N. W. 2d 577;
School District v. Wood, 144 Neb. 241, 13 N. W. 2d 153;
Stork v. Evangelical Lutheran Synod, 129 Neb. 311,
261 N. W. 552; 10 Am. Jur., Charities, § 64, p. 631.

The theory of the case of appellants is definite. It is
disclosed by the allegations of their petition that the
situation confronting the appellants calls for an applica-
tion of the cy pres doctrine or, what is in essence the

same thing, the application of the rules appropriate to the administration of a public charitable trust. School District v. Wood, *supra;* In re Estate of Harrington, *supra.*

An extended discussion of the powers of a court of equity with reference to a charitable trust is not justified. It is sufficient for this case to say that the state courts of equity are invested by the Constitution with the jurisdiction of the chancery courts of England as it existed at the time of the separation from that country and this includes authority to administer charitable trusts. The power in this regard is entirely judicial. Equity does not itself administer the trust but acts through a trustee appointed by the donor or in the instance of failure thereof the court will appoint a trustee. The judicial cy pres doctrine permits a court of equity to direct the use of property given to a charity to as nearly the same purpose as possible when the original plan becomes impossible or inexpedient if a general charitable intent is disclosed in the instrument creating the trust. The principles of construction applied to public charities evolved the judicial cy pres doctrine and in appropriate circumstances the court is required to look beyond the institution or trustee particularly designated to administer the property given and the specific manner in which it is to be administered to those for whose benefit it is to be administered. If it appears that the latter were the real objects of the bounty of the donor the trust will survive the failure of the particular trustee and the specified method of administering the trust if the court can carry into effect as near as may be the dominant purpose of the donor. Hobbs v. Board of Education, 126 Neb. 416, 253 N. W. 627; Rohlff v. German Old People's Home, 143 Neb. 636, 10 N. W. 2d 686; School District v. Wood, *supra;* In re Estate of Harrington, *supra.*

The doctrine that a gift for charity having become impossible of application according to the intent of the donor, because conditions or restrictions imposed by him

cannot be respected or any other cause shall be applied as nearly as may be according to that intent, obviously can have no existence when the donor himself declares how the gift shall be used in the event of the failure of the charitable use to which he, in the first instance, provided that it should be devoted. In re Estate of Harrington, *supra*, concerned a gift by will of one-fifteenth of a fund " "* * * to the Presbyterian Theological Seminary at Omaha, Nebraska, if in existence; but if not in existence at the death of the survivor of said testators, then to said Board of National Missions of the Presbyterian Church, U. S. A. * * *.' " It was determined that the Presbyterian Theological Seminary at Omaha, Nebraska, was not in existence within the meaning of the will at the time of the death of the last of the two testators of the will. This court said: "It is elementary that cy pres does not apply until it clearly appears that the will or wish of the donor cannot be given effect, and, of course, the doctrine can have no existence when the donor himself, as in the case at bar, has provided for application of the bequest in the event of failure of the charitable use to which he in the first instance directed that it should be devoted. * * * To permit plaintiff to recover herein would be a violation of the latter rule." In Larkin v. Wikoff, 75 N. J. Eq. 462, 72 A. 98, it is said: "* * * the doctrine of cy pres, that is, the doctrine that a fund for charity impossible of application according to the intention of the donor shall be applied as nearly as may be according to his intention, obtains in this state; but the doctrine cannot be applied where the donor himself has directed what disposition shall be made of the trust property in the event of the failure of the charitable use to which he directed it should be devoted * * *." See, also, Imbrie v. Steen, 96 N. J. Eq. 190, 124 A. 155; Hartford Nat. Bank & Trust Co. v. Oak Bluffs First Baptist Church, 116 Conn. 347, 164 A. 910; Rhode Island Hospital Trust Co. v. The American Nat. Red Cross, 50 R. I. 461, 149 A. 581; Bowditch v. Attorney General, 241

Mass. 168, 134 N. E. 796, 28 A. L. R. 713; Annotation, 74 A. L. R. 671; 2A Bogert, Trusts and Trustees, § 431, p. 318; 3 Scott, Trusts, § 399.2, p. 2104; 14 C. J. S., Charities, § 52, p. 516; 10 Am. Jur., Charities, § 124, p. 676. The judicial cy pres doctrine is of no importance to the case of appellants, if the donor provided how the gift should be used in the event the college could not for any reason continue to have the use and advantage of it.

The college was created to promote education by means of a college at York, Nebraska, with the cooperation, assistance, and sponsorship of the church. Its existence was only for school purposes. This was declared by the public records of the county as early as August 27, 1890, more than a year and a half before the conveyance was made which is important to this case. The deed was acknowledged in York County. It may be assumed that the settlor of the trust knew at least the facts concerning the college shown by the public records of the county. The real estate comprising the campus of the college was conveyed to the trustees in trust for the church for school purposes subject to the condition that no mortgage or encumbrance should ever be put on the real estate or any buildings thereon and the real estate should never be alienated. In case the restriction or condition was violated the real estate should "revert to the County of York" and five trustees should be appointed to receive and hold the property for school purposes. The general intention and dominant purpose of the settlor were that the subject of the trust should be devoted to a charitable use, that is, that it should be used without exception for school purposes. This was to be accomplished by the utilization of the facilities and activities of the college at York, Nebraska, so long as these were available and the restriction or condition imposed by the donor as expressed in the grant was respected. The church was a mere conduit for the devotion of the property to a general charitable purpose. If and when this could not be continued because of a violation of the condition

exacted by the donor, or for any other reason, the trust property should pass to the county and the court should appoint five trustees to receive and hold the trust property for school purposes. In the latter event the use of the property for school purposes was to be realized by the equity court administering the trust by and through trustees appointed by it because of the failure of the donor to name or designate them. The county was in that event only a mere conduit and not an indispensable necessity to the subjection of the property to school purposes in York County by the intervention of the court of equity and the trustees called to service by it. The property in any event was not to revert to the grantor or to his successor. The major characteristic of the trust was that the subject of it should, without qualification, be used for school purposes by the college at York, but if and when that was prevented by any cause the trust property should be received, held, and administered for school purposes in the county by five trustees appointed by the court.

Appellants argue that the reversion in favor of the county, in case of violation of the restriction or condition stated in the deed, has been eliminated by the decree of the district court for that county; that the deed in question must be construed as though "no reverter clause was in the deed at all"; and that the deed is simply a conveyance to the trustees of the college in trust for the church for school purposes with the restriction against alienation or encumbrance. The information concerning the action in which the decree referred to was rendered is quite meager. No part of the record of the case is exhibited. The statements in the petition of appellants in this case are the sole source of knowledge of this court of the prior case. These are that the trustees brought an action against the county to have removed the cloud upon the title of the trustees to the real estate referred to herein "by the apparent provision for reverter to the County of York"; to quiet title to the real estate

in the trustees; to bar York County of any right, title, or interest in or to the real estate or the trust; and that a decree was rendered therein by the district court against the county granting the relief asked by the trustees. The basis of the decree in that case is not alleged. It is not claimed that the validity and effectiveness of the expressed desire of the settlor that in the event the college could not continue to enjoy and use the subject of the trust that it should be received and held by trustees appointed by the court and administered for school purposes was assailed and adjudicated in that case as legally offensive and insufficient. It is only said that the county was adjudged to have no right or interest in the trust or the subject thereof and that it was barred from claiming any. This may have been induced by some believed inherent incapacity of the county to be concerned in a trust. In any event the naming of York County in the deed, as it was done, was only a detail in an attempt to have the property, in case a certain contingency should come about, devoted to the general charitable purpose and use designated by the settlor. It was not necessary or useful that the county or any person or organization be named as the county was in this instance. The instrument creating the trust imposed no duty upon, created no right or interest in, and conferred no advantage upon the county. The most that can be said of the mention of the county is that it was intended as a mere conduit for the application of the trust property to the general charitable purpose designated by the donor. The meaning and substance of this part of the deed are that if the college could not for any reason continue to use the subject thereof for the charitable purpose required then the property should be received, held, and administered for school purposes in York County by trustees appointed by the court. It would be difficult to successfully maintain that this is legally objectionable or that it is an insufficient declaration by the donor of how the gift is to

be used in the event the college cannot continue to use it upon the condition required by the grant.

The principles applicable to public charities require courts to look beyond the institutions or trustees designated to take or administer the property given and the particular manner of its administration to those for whose benefit it is to be administered. The instances are numerous in which the organization to which the gift was to go and by whom it was to be administered would not or could not accept or perform the trust but it did not fail because the machinery for carrying it into effect was deficient. If the dominant purpose of a charitable trust is certain, as it is in this instrument, it will not be denied execution because of the absence of perfection of detail or the presence of unnecessary and immaterial inappropriate language in the instrument evidencing the trust.

The decree of the district court should be and it is affirmed.

AFFIRMED.

YEAGER, J., concurring in the result.